**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Danny Ray OWENS, Defendant-
Appellant.**

**No. 19293.**

United States Court of Appeals
Sixth Circuit.
Sept. 18, 1969.

Daniel T. Taylor, III, Louisville, Ky., for appellant.

M. Ronald Christopher, Asst. U. S. Atty., Louisville, Ky., for appellee, Ernest W. Rivers, U. S. Atty., Louisville, Ky., on brief.

Before O'SULLIVAN, PHILLIPS and CELEBREZZE, Circuit Judges.

PHILLIPS, Circuit Judge.

Danny Ray Owens appeals from his conviction for refusal to be inducted into the armed service in violation of 50 U.S.C. App. § 462.

On December 29, 1964, Owens registered with local Selective Service Board No. 290 in Scottsburg, Indiana. He attended the University of Indiana for two years with a 2–S classification. On March 12, 1968, he was classified 1–A. He took none of the steps provided by the Selective Service System to have his classification reviewed by any appeal board. He never claimed to be a conscientious objector. On April 3, 1968, he obeyed an order to report for a physical examination and was found acceptable.

He was ordered to report for induction on May 5, 1968. On that date he appeared at the office of the local board in Scottsburg and was sent to the induction center at Louisville, Kentucky. At the induction center he refused processing, that is, the taking of various tests and physical examinations, and declined to be inducted.

At a trial under a one count indictment, Owens was found guilty by a jury. District Judge James F. Gordon imposed the maximum sentence.

Three questions are raised on appeal:

(1) Was Owens deprived of due process of law by the action of the District Court which allegedly limited the defenses which Owens could raise before the jury?

(2) Did the District Court err, to the detriment of Owens' right under the Sixth Amendment, in refusing to permit defense counsel to make certain inquiries of the prospective jurors on the *voir dire*?

(3) Did the District Judge commit reversible error in remarking to the jury that "no man has the constitutional right to disobey the Selective Service laws of the nation and purity of motive is not a legal defense to a violation of the existing law?"

I.

The defense which Owens undertook to assert at the trial was summarized in a statement which he gave to induction officials in response to their request that he set forth in writing his reasons for his conduct at the induction center. The District Court, over Government objection, permitted this statement to be read to the jury during cross-examination of one of the Government's witnesses. Owens wrote as follows:

"I find it difficult to refuse induction as I am sure any one would. I will face harsh consequences for my refusal. I will face the scorn of many Americans who will not understand or even try to understand the reasons for my act. These Americans will invent other reasons for my refusal. A few will call it treason. Some will say that I am trying to destroy the 'American way of life.' Others will say that I am a coward. Almost all of them will conclude that I am a misfit. In due time, I will have to serve a sentence in a penitentiary. Since most of them will not understand my motives, the other inmates may give me a rough time. Finally, after I serve my sentence, I will probably face some problems finding suitable employment.

"I realize, by illegal means, I could have avoided military service, but I want to do more than merely avoid military service. I want to focus attention on the immorality and the insanity of the Vietnam War. I also hope to encourage other men to avoid military service either by refusing induction or other means.

"If enough men refuse induction, Americans will have to take a look at the ugly aspects of the war. The four most recent Presidents of the United States have each tried to force the Vietnamese to submit to American domination. The United States supported the French colonials, and when the Viet Minh drove the French out of Indo-China, began supporting reactionary elements in South Viet-

nam. As American aid to the South Vietnamese dictatorship increased, oppression by the Diem government also increased. A series of military dictatorships have not proved successful in gaining the support of the South Vietnamese. The Viet Cong increased their base of support while the South Vietnam government lost what little support they had. Therefore, the United States took over most of the fighting.

"While fighting in Vietnam, the United States has broken too many international laws to mention. Exservicemen have testified that the killing and the torturing of prisoners is part of our everyday military operations. Illegal weapons, including deadly gases, 'fragmentation' bombs, and 'defoliation' chemicals, are used consistently against the Vietnamese.

"Now I face severe penalties for refusing to take part in this massacre of innocent Vietnamese. I will take whatever punishment our legal system decides to give me. No threat of punishment, however, will make me partake in genocide.

"I refuse to continue with induction proceeding because I consider the military operations in Vietnam to be immoral and illegal."

Owens testified as a witness on his own behalf, explaining to the court and the jury his reason for refusing induction and for not making an attempt to obtain a classification as a conscientious objector:

"Q. Would you explain to me what your purpose was in that connection?

"A. To be a conscientious objector you have to be a pacifist.

"Q. You have to be what, sir?

"A. A pacifist.

"Q. All right.

"A. And I do not object to all wars.

"Q. I take it then from your remark, Mr. Owens, that you do object to some wars; is that right?

"A. Yes.

"Q. Specifically, does your objection include the Vietnamese War?

"A. Yes.

"Q. What are your reasons for that, sir?

"A. I consider it to be illegal because the United States has been breaking international agreements, and I believe—

\* \* \* \* \* \*

"Q. Danny—

"A. (Interrupting) I—I feel that I would be a war criminal if I served in the Armed Forces of the United States.

"Q. What is a war criminal, as you understand it, sir?

"A. Someone who commits crimes against peace or humanity for war crimes.

"Q. How would you—do you feel then do you have an objection to following the induction procedures; is that the idea?

"A. Yes.

"Q. All right. Do you—do you feel that your drafting would have a connection with the Vietnamese War?

"A. Yes. I feel I would be an accomplice.

"Q. You feel that you would be a what?

"A. An accomplice to the war crimes being committed.

"Q. What war crimes do you refer to specifically?

"A. The use of lethal gases.

"Q. What, sir?

"A. The use of deadly gases.

"Q. All right; additionally, what?

"A. Chemical warfare.

"Q. In what connection, Mr. Owens?

"A. Destroying crops.

"Q. Is that what they call defoliation?

"A. Yes.

"Q. All right; anything else, sir?

"A. Uh, concentration camps.

"Q. Is it your belief that these measures are presently being employed by the United States of America in Vietnam at the present time?

"A. Yes.

"Q. Is it your further belief that the action of the United States in so doing is in violation both of the laws of humanity and the actual treaties and laws of our Nation?

"A. Yes.

"Q. Is it your view that, as a citizen of the United States of America, you are bound by the treaties that the United States has executed?

"A. Yes.

"Q. Do you have any notes in regard to the use of chemical substances, such as napalm?

"A. Yes, I do; this is illegal, too, by the Geneva Convention, I believe.

"Q. You mention a Geneva Convention. What is your understanding of what was provided by the Geneva Convention?

"A. This concerned P.O.W.'s.

"Q. What is a P.O.W.?

"A. Prisoner of War.

"Q. Yes, sir.

"A. And also actions concerning the warfare, I believe, and the use of napalm is an illegal weapon, like chemical warfare.

"Q. What is this napalm, if you know, sir?

"A. Basically I think it is, uh, what they call a jellied gasoline.

"Q. What is your understanding as to the use that it has been put to in Vietnam?

"A. They have used it to bomb villages which contain civilians.

"Q. This included unarmed women and children?

"A. Yes.

"Q. And other noncombatants?

"A. Yes.

"Q. All right, sir. Mr. Owens, what was your belief that if drafted—

did you believe you would go to Vietnam?

"A. Yes.

"Q. Are you afraid for your personal safety to go to Vietnam?

"A. No.

"Q. As you have already told us, you are not a pacifist within the classification—the classic definition of that term; is that right, sir?

"A. Yes; yes, sir.

"Q. Therefore, your refusal to go to Vietnam, as you thought, would be the option based on your belief that to do so you would be ordered to do certain inhuman criminal activities or acts; is that right, sir?

"A. Yes, sir.

"Q. And this would be along the lines that you have discussed, for instance, could you obey an order to execute wounded prisoners?

"A. No.

■ At the beginning of the trial the District Judge stated at a hearing in chambers outside the presence of the jury that Owens would be limited in the defenses that could be offered during the trial. During the course of the trial, however, Owens was permitted to explain to the jury in detail his reasons for refusing to be inducted and the above-quoted statement was read to the jury. We find no merit in the contention that Owens was deprived of the right to present his theory of defense to the jury. In his effort to give Owens the benefit of all doubts on this point, the District Judge appears to have allowed an even wider latitude than is required under the decisions. See United States v. Butler, 389 F.2d 172 (6th Cir.), cert. denied, 390 U.S. 1039, 88 S.Ct. 1636, 20 L.Ed.2d 300.

In United States v. Mitchell, 369 F.2d 323 (2d Cir.), cert. denied, 386 U.S. 972, 87 S.Ct. 1162, 18 L.Ed.2d 132, a draft registrant, who had been classified as 1–A and had not exhausted his administrative remedies, sought to produce evidence that the Vietnam war was being

conducted in violation of various treaties to which the United States is signatory and that the Selective Service System was being operated as an adjunct of this military effort. The District Court ruled out all such evidence as immaterial. On appeal the exclusion of this evidence was assigned as error. Judge Medina said:

"Nevertheless, appellant's allegations are not a defense to a prosecution for failure to report for induction into the Armed Forces and his evidence was properly excluded. Regardless of the proof that appellant might present to demonstrate the correlation between the Selective Service and our nation's efforts in Vietnam, as a matter of law the congressional power 'to raise and support armies' and 'to provide and maintain a navy' is a matter quite distinct from the use which the Executive makes of those who have been found qualified and who have been inducted into the Armed Forces. Whatever action the President may order, or the Congress sanction, cannot impair this constitutional power of the Congress." *Id.* at 324.

In United States v. Bolton, 192 F.2d 805 (2d Cir.), where the defendant challenged the constitutionality of the Selective Service Act of 1948, the Court held:

"So far as the argument of unconstitutionality invokes the possibility that the appellant may be sent to fight in Korea, we think it is premature. Any question as to the legality of an order sending men to Korea to fight in an 'undeclared war' should be raised by someone to whom such an order has been directed, not by the appellant, who might never be ordered abroad for military duty, even if he reported for induction. Cf. United States v. Richter, 9 Cir., 181 F.2d 591, 594, certiorari denied 340 U.S. 892, 71 S.Ct. 199, 95 L.Ed. 647." *Id.* at 806.

In the instant case the legality or nonlegality of the conduct of American armed forces in the war in Vietnam was no defense to the crime charged since the conduct of that war has no effect on the power of the United States "To raise and support Armies." U.S.Const., Art. I, § 8(12). None of the treaties or laws relied on by the defendant bars the raising of an army. Therefore evidence with respect to the war in Vietnam was irrelevant and inadmissible. Moreover, we agree with the Second Circuit in United States v. Bolton, *supra*, that a challenge to the legality of a particular war is premature when raised as a defense to a charge of violation of the Selective Service Act. The claim at that point is not justiciable. If the defendant had obeyed the order to be inducted, he might never have been assigned to Vietnam and might never have been exposed to the situations of which he complains.

Throughout the trial in the present case the District Judge adhered to the position that purity of motive is not a valid defense to violation of an act of Congress. Nevertheless Owens was permitted to explain to the jury, as quoted above, his reasons for refusing to be inducted and the abovequoted statement setting forth his convictions concerning the Vietnam war was read to the jury.

The record demonstrates to the satisfaction of this Court that Owens' reasons for rejecting induction were explained to the jury and that he was not deprived of presenting his defense. Defense counsel made an eloquent closing argument that the war in Vietnam is in violation of treaties to which the United States is committed. Counsel appealed to the jury:

"It is the intelligent, loving sons and daughters of yourselves and of our land that reject this war    *    *    *

*    *    *    *    *    *

"[T]he day will come when a man will have the right of his conscience; when a man will have the right to make a determination that he will not commit atrocities; that he will not abuse other human beings; that he will not take life; that he will not hurl jellied gasoline onto other human beings; that he will not destroy the crop lands; that he will not commit genocide, and when

that day comes it will be only because of the Danny Owenses. * * *

"You have no coward here. You have no foolish lunatic here. You have a thoughtful, idealistic young man * * *."

We hold that Owens was not deprived of due process of law by limitation of the defense which he chose to make before the jury. This defense, which the record indicates was offered by an intelligent young man who was represented by able and diligent counsel, is not a valid defense to the criminal charge under which Owens was convicted. The statute under which Owens was convicted is a valid exercise by the Congress of the war powers granted by the Constitution. United States v. O'Brien, 391 U.S. 367, 377, 88 S.Ct. 1673, 20 L.Ed. 2d 672; United States v. Nugent, 346 U.S. 1, 73 S.Ct. 991, 97 L.Ed. 1417; United States v. Butler, *supra*, 389 F.2d 172 (6th Cir.); United States v. Miller, 367 F.2d 72 (2d Cir.), cert. denied, 386 U.S. 911, 87 S.Ct. 855, 17 L.Ed.2d 787.

## II.

The District Judge conducted the voir dire examination of prospective jurors in accordance with Rule 24(a), Fed.R.Crim. P. In addition to the usual inquiries to ascertain the qualifications and impartiality of jurors, the Judge asked the further questions as reflected in the following quotation from the record:

"Now, is there any person on the jury panel who possesses such strong opinions about the international involvement of the United States that he feels that such opinion would prevent him from giving a fair and impartial trial under the law and the evidence to both the United States and to the defendant, either way?

"Now, is there any person on the jury panel who has served in the Armed Forces of the United States?

"(SEVERAL HANDS WERE RAISED AT THIS POINT)

"Does the mere fact that you have served, or would the mere fact that you have served in and of itself, or any experience resulting to you growing out of that service, would that prevent you from giving this young man a fair and impartial trial under the law and the evidence?

"Now, I assume that there are persons on the jury whose husbands or wives or brothers or sisters or perhaps children, have served in the Armed Forces of the United States. Would the mere fact that some person of close relationship to you has served in the Armed Forces of the United States prevent you from giving the defendant a fair and impartial trial under the law and the evidence?

"Now, I want each juror to examine his or her conscience and determine if there is any reason known only to you that, in a case of this type, you feel would have such influence upon you as to make it impossible for you to give either the Government or the defendant and a fair and impartial trial?

"MRS. DAVIS: I have a son on active duty in the Navy now.

"BY THE COURT: Do you feel that that would affect your judgment as to the defendant's rights?

"MRS. DAVIS: No. I do feel they should know it or you should know it.

"BY THE COURT: And you are?

"MRS. DAVIS: MRS. H. HAROLD DAVIS.

"BY THE COURT: Mrs. Davis, you feel that even though he is on duty in the Navy, you could weigh this case under the evidence presented here and under the instructions of the Court and without regard to your son's experience, give this gentleman a fair and impartial trial?

"MRS. DAVIS: I really don't think I could.

"BY THE COURT: You may stand aside, Mrs. Davis. Call another juror, Madam Clerk."

The District Judge later excused a second juror, a Mrs. Mudd, who in response to careful investigation by the

Court responded that she might not be able to give a fair and impartial trial because she had a relative or relatives who had served with the armed forces.

Defense counsel exercised ten peremptory challenges. The District Judge offered to allow an additional peremptory challenge and this offer was rejected by counsel for Owens.

Owens asserts that the District Judge deprived him of Sixth Amendment rights by refusing to permit defense counsel to ask certain questions of prospective jurors. The following are illustrative of the rejected questions:

"The question I would, in behalf of the defendant Owens, like to ask—the first question to the respective jurors as they sit in the box is whether or not they subscribe to the belief that the United States of America is bound by its treaties and international agreements.

\*　\*　\*　\*　\*　\*

"May I request a further instruction that on voir dire, that is, the voir dire as to the prospective jurors, the question be asked whether any of them are familiar with or feel that the Nation is bound by the Charter of the International Military Tribunal of Nurnberg; \* \* \*

\*　\*　\*　\*　\*　\*

"May I request further a similar type voir dire inquiry from the Bench to the twelve, as they sit, relative to the United Nations General Assembly Resolution No. 95.

\*　\*　\*　\*　\*　\*

"May I request a similar inquiry in regard to the Charter of the United Nations?

\*　\*　\*　\*　\*　\*

"May I further request a further inquiry in regard to the Geneva Convention on prisoners of war, of 1949?

\*　\*　\*　\*　\*　\*

"All right, sir; may I request a further instruction in regard to the Geneva Accord \* \* \* of 1950?"

The questions that should be asked upon voir dire examination are a matter of discretion with the District Court. United States v. Carabbia, 381 F.2d 133, 136 (6th Cir.), cert. denied, 389 U.S. 1007, 88 S.Ct. 564, 19 L.Ed.2d 602. The duty of the reviewing court is only to examine the record to determine whether the discretion has been abused. *Id.;* Spells v. United States, 263 F.2d 609, 612 (5th Cir.), cert. denied, 360 U.S. 920, 79 S.Ct. 1439, 3 L.Ed.2d 1535.

We hold that refusal to permit defense counsel to propound these questions did not violate any rights of Owens under the Sixth Amendment. The excluded questions were immaterial and irrelevant to the issue to be tried by the jury. See United States v. Mitchell, *supra,* 369 F.2d 323 (2d Cir.), cert. denied, 386 U.S. 1042, 87 S.Ct. 1162, and discussion under I above.

### III.

After the District Judge had permitted the reading to the jury of the statement of Owens which is quoted near the beginning of Part I of this opinion, he made the following comment to the jury:

"Ladies and gentlemen of the jury; the Court out of extreme laxity and, I think as not required by the law, has allowed this statement to be read to you and I state to you that under the law no man has the constitutional right to disobey the Selective Service laws of the Nation and purity of motive is not a legal defense to a violation of the existing law."

The District Judge charged the jury to the same effect.

Not only do we find no error in this remark of the District Judge, but we consider it to be a correct statement of law. It is fundamental to the perpetuation of the government of the United States that this remain a government of law and not of men. No citizen has the right to take the law into his own hands or to violate an Act of Congress because he disagrees with it. Under the Constitution the enactment of laws

is the prerogative of Congress. Purity of motive is not a valid defense to violation of an Act of Congress, nor is disagreement with a constitutional statute a permissible ground for disobeying it.

## IV.

There is respected authority for the proposition that at some point a member of the Armed Services who is assigned to combat duty in Vietnam should have the right to have the issues raised by appellant as to international treaty obligations determined by a constitutional court. See dissents of Justices Stewart and Douglas in Mora v. McNamara, 389 U.S. 934–939, 88 S.Ct. 282, 19 L.Ed.2d 287. An unsettled question is at what point can these issues be raised. See Smith v. Cahoon, 283 U.S. 553, 564, 51 S.Ct. 582, 75 L.Ed. 1264.

It has been held that an individual can be tried for violation of the laws of war even though he is following orders. The Nurnberg Trial, 6 F.D.R. 69, 110–111, citing Ex parte Quirin, 317 U.S. 1, 63 S.Ct. 2, 87 L.Ed. 3 (opinion by Chief Justice Stone). Apparently an American citizen can be tried in American courts for violations of the law of war. Ex parte Quirin, *supra,* at 27–28, 63 S.Ct. 2. See Dorsen and Rudovsky, "Some Thoughts on Dissent, Personal Liberty and War," 54 A.B.A.J. 752, 756 (Aug. 1968).

Persons seeking to avoid violations of international treaty obligations have not been permitted to raise these issues in an action for injunction after induction, Luftig v. McNamara, 126 U.S.App.D.C. 4, 373 F.2d 664, cert. denied, 387 U.S. 945, 87 S.Ct. 2078, 18 L.Ed.2d 1332; as defenses to a criminal prosecution for refusing to submit to induction, United States v. Valentine, 288 F.Supp. 957, 983 (D. Puerto Rico); or in action for injunction after being ordered into processing for Vietnam, Mora v. McNamara, 128 U.S.App.D.C. 297, 387 F.2d 862, cert. denied, 389 U.S. 934, 88 S.Ct. 282 (note dissent by Justice Stewart and Justice Douglas).

We hold that these issues cannot be raised through the procedure sought to be applied by appellant in the present case; that is, by refusing to obey induction orders and by interposing international treaty obligations as a defense in a criminal prosecution for refusal to be inducted.

Affirmed.