**UNITED STATES of America**

v.

**Charles C. HIBBS.**

**Crim. No. 72–600.**

United States District Court,
E. D. Pennsylvania.

April 9, 1973.

See also, D. C., 352 F.Supp. 64.

822

Robert E. J. Curran, U. S. Atty., by Malcolm L. Lazin, Asst. U. S. Atty., Philadelphia, Pa., for the United States.

John J. O'Brien, Jr., Philadelphia, Pa., for defendant.

## MEMORANDUM

HANNUM, District Judge.

Presently before the Court are the motions of the defendant, Charles C. Hibbs, in arrest of judgment, for judgment of acquittal, and/or for a new trial. Combined, the defendant has advanced 64 arguments in support of these motions. Only those that are considered in his brief shall be discussed.

The indictment contained 39 counts. Each count charged the defendant with a separate violation of Section 1010 of

Title 18, U.S.C.[1] Among other things, this section makes it a crime for anyone to submit false statements to the Department of Housing and Urban Development for the purpose of influencing in any way the action of such department. Together, the 39 counts relate to certifications issued in the course of the sale of thirteen different houses on the 2900 block of North Marshall Street in Philadelphia. The certifications were issued at various times during the Spring, Summer, and Fall of 1970.

Each count charged that on or about a given date the defendant, for the purpose of influencing in any way the action of the Department of Housing and Urban Development, did knowingly and willfully make, pass, utter, or publish to the said Department of Housing and Urban Development, a false statement, knowing the same to be false, contained in a certification regarding the condition of a given aspect of a given house.

A series of three counts was devoted to each and every house. The first of each series charged that a false certification was submitted regarding the electrical system of that house; the second, that a false certification was submitted regarding the condition of the plumbing and heating system of the same house; and the third, that a false certification was submitted regarding the condition of the roof of the same house. As previously stated, there being three counts per house with respect to thirteen separate houses, a total of 39 counts were set forth in the indictment.

## Motion in Arrest of Judgment

In support of his motion in arrest of judgment pursuant to Fed.R.Crim.P. 34, the defendant advances three fundamental arguments. First, that the indictment "failed to contain the necessary element of intent." Second, that there was a variance between the indictment and the government's proofs. And finally, that the indictment failed to state "the purpose for which the defendant criminally intended to influence 'the action' of the Department of Housing and Urban Development."

■■ By his first argument the defendant strips the word "intent" of its generic sense and argues that it is a vocable consisting of six letters that, as a noun, must be typed into the indictment. He asserts that, absent these six letters, the indictment comes apart. This argument, however, is not only unpersuasive, but borders on being sophistic. The offenses described in Section 1010 clearly require proof of more than a general *mens rea*; they require proof of a specific *mens rea*. The words "knowingly," "willfully," and "for the purpose of influencing in any way the action of the Department of Housing and Urban Development" are descriptive of that specific *mens rea*, and the defendant was indicted, tried, and convicted on the basis of such proof. In this regard, neither the indictment nor the proofs offered by the Government violate the teachings of Morissette v. United States, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952) or United States v.

---

1. 18 U.S.C. § 1010 reads in its entirety as follows:

"Whoever, for the purpose of obtaining any loan or advance of credit from any person, partnership, association, or corporation with the intent that such loan or advance of credit shall be offered to or accepted by the Department of Housing and Urban Development for insurance, or for the purpose of obtaining any extension or renewal of any loan, advance of credit, or mortgage insured by such Department, or the acceptance, release, or substitution of any security on such a loan, advance of credit, or for the purpose of influencing in any way the action of such Department, makes, passes, utters, or publishes any statement, knowing the same to be false, or alters, forges, or counterfeits any instrument, paper, or document, or utters, publishes, or passes as true any instrument, paper, or document, knowing it to have been altered, forged, or counterfeited, or willfully overvalues any security, asset, or income, shall be fined not more than $5,000 or imprisoned not more than two years, or both."

Beard, 414 F.2d 1014 (3rd Cir. 1969). By the same token, there is nothing unsound with the decisions in Watts v. United States, 394 U.S. 705, 89 S.Ct. 1399, 22 L.Ed.2d 664 (1969); United States v. Patillo, 431 F.2d 293 (4th Cir. 1970), they are simply inapplicable to the present case.

■ The defendant's second argument is equally unpersuasive. The Government's proofs as to the issuance of mortgage insurance were clearly relevant to explaining how the FHA's mortgage insurance program operates. Unlike the defendant, this Court does not read Stirone v. United States, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960) as preventing the government from offering relevant evidence in explanation of the crime charged. The indictment in this case charged that the defendant, for the purpose of influencing the action of the Department of Housing and Urban Development, willfully and knowingly made, passed, uttered, or published to the Department of Housing and Urban Development false statements, knowing the same to be false. The Government's proofs did not vary from these charges, nor did the Court's charge to the jury.

■ The defendant's third argument, that the indictment was fundamentally defective because it failed to state "the purpose for which the defendant criminally intended to influence 'the action' of the Department of Housing and Urban Development," is also specious. Again he ignores the plain language of the statute which on its face states that the offense is complete when an individual acts for the purpose of influencing the Department of Housing and Urban Development "in any way." United States v. Manuszak, 234 F.2d 421 (3rd Cir. 1956), though sound in its own right, is thus inapplicable. The defendant's subsidiary argument, that the indictment is defective because the defendant does not fall within the class of persons to which the statute applies, is similarly unpersuasive. The statute on its face applies to "whoever" commits the offense.

### Motion for Judgment of Acquittal

■ The defendant's present conviction is the second of two that he has suffered within the past year. In the first prosecution brought against him, he was convicted of 39 violations of 18 U.S.C. § 1001 and § 2. Following that trial, he successfully moved to arrest the judgment on the basis of the fact that the indictment failed to allege a necessary element of the crimes charged, namely, that they were committed "willfully." The first conviction having been set aside upon the defendant's motion, on October 25, 1972, he was reindicted. In this, the second prosecution, he was charged with 39 violations of 18 U.S.C. § 1010. Prior to trial, he moved to dismiss the indictment on the basis that a second prosecution placed him twice in jeopardy and was therefore violative of the Fifth Amendment. This double jeopardy argument was rejected by a Memorandum and Order dated December 6, 1972. Now, the defendant raises a variation of the same argument. Citing United States v. Sisson, 399 U.S. 267, 90 S.Ct. 2117, 26 L.Ed.2d 608 (1970) he now argues that the granting of his motion in arrest of judgment in the first prosecution was not really that, but rather, a directed acquittal. Although the defendant is quite right that in *Sisson* the grant of what the trial court there labelled as a motion in arrest of judgment was held to constitute the grant of a judgment of acquittal, he is incorrect in his assertion that the arrest of judgment entered in his first prosecution was similarly mislabelled. The rationale in *Sisson* was that the trial court, when granting the defendant's motion in arrest of judgment, went beyond the "face of the record" and relied upon evidence that was developed during the trial. Because a motion in arrest of judgment is properly confined to challenging the sufficiency of the indictment or the court's jurisdiction, the trial court in *Sisson* was held to have directed an acquittal. When the present defendant's motion in arrest of judgment was granted following his first conviction,

the trial court's action was based upon a defect in the indictment. It had nothing to do with the proofs developed at trial. The defendant was not acquitted at the conclusion of the first prosecution, and, therefore, has not been twice put in jeopardy in this prosecution.

■ Again raising a double jeopardy argument, the defendant contends that the entry of a judgment of acquittal in the present case is dictated by the cases of United States v. Jorn, 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971); Downum v. United States, 372 U.S. 734, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963); and Green v. United States, 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957). It has long been held, however, that where a conviction is set aside upon an insufficiency in the indictment and at the instance of the defendant, a second prosecution is not barred by the Fifth Amendment. United States v. Tateo, 377 U.S. 463, 84 S.Ct. 1587, 12 L.Ed.2d 448 (1964); United States v. Ball, 163 U.S. 622, 16 S.Ct. 1192, 41 L.Ed. 300 (1896).

■ Next, the defendant argues that judgment of acquittal should be granted because the Government failed to prove that the false statements made or passed by the defendant did in fact influence the action of the Department of Housing and Urban Development. Section 1010, however, requires only that false statements be made or passed "for the purpose of influencing" in any way the action of HUD. Nowhere is it stated that the false statements must actually influence the agency. Moreover, unlike Section 1001 of Title 18, U.S.C., which proscribes the making of material false statements to any department or agency of the United States, Section 1010 includes no requirement that the false statement made or passed must be material. Thus, the defendant's reliance upon United States v. East, 416 F.2d 351 (9th Cir. 1969), is misplaced.

### Motion for New Trial

■ The defendant first asserts that this Court erred in denying his motion for a bill of particulars. He asserts that he was thus prejudiced by an inability to adequately prepare his case; by surprise at the time of trial; and, by a later risk of double jeopardy. In light of the fact that the second prosecution was based almost entirely upon the evidence that the Government produced during the first trial, the defendant's present claim of inability to prepare and surprise is astounding.

■ Next, the defendant argues that the Court committed error in precluding defense counsel from cross-examining a Government witness concerning FHA Circular Letter No. 152. The Court's ruling was based upon the fact that the particular Circular Letter was promulgated subsequent to the commission of the offenses charged in the indictment and was, therefore, irrelevant.

■ The defendant also argues that the Court erred in refusing to grant a mistrial based upon three leading and allegedly prejudicial questions asked by the prosecutor. Defense counsel objected to each as they were made and before the witness had an opportunity to answer. The objection to each question was not only sustained, but the questions themselves were ordered stricken from the record. During the charge, the Court instructed the jury as follows:

"When the Court has sustained an objection to a question addressed to a witness the jury must disregard the question entirely and may draw no inference from the wording of it, or speculate as to what the witness would have said if he would have been permitted to answer any questions." (N.T. 535)

Thus, even if the questions themselves were arguably prejudicial, the defendant certainly did not suffer sufficient prejudice to justify the grant of a new trial.

■ Citing Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L. Ed.2d 104 (1972) the defendant next contends that the Government failed to inform the jury that two of the Government's witnesses had been guaranteed

prosecutorial leniency. This, he argues, is a denial of his right to due process. Were it so, his argument would be colorable. The defendant, has failed to mention who these two witnesses were. Moreover, this Court does not understand *Giglio* to place any more of a burden upon the prosecution than to inform defense counsel of any understandings or agreements the Government may have as to future prosecutions of witnesses. Finally, the critical witnesses used by the prosecution in the present case were the same as those who testified during the defendant's first trial. At that trial, the defendant and his counsel were both informed by the prosecutor of an informal agreement between the Government and the witness Raymond Darrah. It was then disclosed that, should Darrah testify, he would not be prosecuted. Once on notice of this agreement, if defense counsel thought it had any impeachment value, it was his responsibility to raise the matter through cross-examination.

■ Next, the defendant argues that the Court committed error by precluding defense counsel from cross-examining a Government witness with respect to a particular section of the Code of Federal Regulations. He bases the argument upon the well known fact that the contents of the Federal Register are required to be judicially noticed. 44 U.S.C. § 1507. By its ruling, however, the Court did not decline to take judicial notice of the Code of Federal Regulations. The ruling was based upon the fact that the attempted cross-examination was irrelevant and immaterial.

■ Further, the defendant contends that the Court erred in admitting expert testimony as to the condition of various aspects of the houses mentioned in the indictment. The expert witnesses examined the houses more than a year after the false statements were made or passed. The defendant argues that the intervening interval of time was so great that the testimony was irrelevant, immaterial and highly prejudicial. When the condition of an object at a given time is in issue, its subsequent condition is, in human experience, some indication of its probable prior condition. The propriety of the inference that the prior condition was the same as the subsequent proven condition will depend upon the likelihood of intervening circumstances having occurred. The expert testimony that was admitted in the present case concerned the condition of the plumbing, heating, and electrical systems and the roofs of houses that presumably had been rehabilitated by the defendant somewhat more than a year earlier. It is well within the realm of human experience that the aspects of these houses to which the Government's witnesses testified should not have changed significantly within such an interval of time. The defendant, as was his right, had an ample opportunity to explain away the effect of the evidence by showing that in the meantime other circumstances had occurred that would suggest that the conditions testified to were not the same as those at the date in issue. The defendant exercised this right at length. Quite apart from such a prerogative, it is clear that the admissibility of such evidence lies in the discretion of the trial court. II Wigmore, Evidence § 437 (3d ed. 1940). In this case there was no abuse of that discretion, and certainly no prejudicial error in the magnitude complained of by the defendant.

■ It is next argued that the Court erred in not permitting the defendant to cross-examine a Government witness with respect to "seller/builder" agreements executed by the mortgagee. These agreements were irrelevant to the issues being tried and were, therefore, properly excluded.

■ Finally, the defendant argues that the Court erred during the voir dire by refusing to examine the prospective jurors with regard to 53 questions submitted by the defendant. The questions that should be asked upon voir dire examination are a matter within the discretion of the trial court. The

questions that were excluded in the present case had either been covered by the Court in its examination or were immaterial and irrelevant to the issue to be tried by the jury. United States v. Bamberger, 456 F.2d 1119 (3d Cir. 1972); United States v. Owens, 415 F. 2d 1308, 1315 (6th Cir. 1969).

For the foregoing reasons, the motions of the defendant, Charles C. Hibbs, for arrest of judgment, for judgment of acquittal, and/or for a new trial will be denied.