812 F.2d 1409
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
The UNITED STATES of America, Plaintiff-Appellee
v.
James Ronald O'LEARY, Defendant-Appellant.
 No. 86-5396.
 United States Court of Appeals, Sixth Circuit.
 Jan. 7, 1987.
 
 Before LIVELY, Chief Judge, and MARTIN and BOGGS, Circuit Judges.
 PER CURIAM.
 
 
 1
 As part of a federal investigation of narcotics violations involving a criminal organization called "The Company", federal agents obtained court authorization to intercept calls to and from four telephones associated with Julius Parker, an unindicted co-conspirator. Some of the taped telephone calls were between Parker and appellant James O'Leary. These phone calls were couched in terms often used for gambling, such as "deuce" and "sheets". At trial, tape recordings of some of these calls were played for the jury, and Parker testified to their meaning, as a prosecution witness. O'Leary was convicted of violating 21 U.S.C. Sec. 846: conspiracy to 1) possess cocaine hydrochloride with the intent to distribute, and 2) distribute cocaine hydrochloride, and of violating 21 U.S.C. Sec. 843(b): intentional use of a telephone to facilitate certain drug-related felonies.
 
 
 2
 On appeal, O'Leary contends that the evidence was insufficient to support a conviction for conspiracy. O'Leary also appeals the denial of his motion at trial to suppress and exclude the wiretap evidence, the trial court's refusal to strike the entire jury panel following a comment by one of the panel members, and the jury's finding that he was a facilitator within the meaning of 21 U.S.C. 843(b). We find all the contentions to be without merit, and therefore affirm appellant's convictions.
 
 
 3
 * Sufficiency of the Evidence
 
 
 4
 Our standard of review of the sufficiency of the evidence to support a conviction is "whether after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Bourjaily, 781 F.2d 539, 544 (6th Cir.1986), United States v. Gallo, 763 F.2d 1504, 1518 (6th Cir.1985), quoting Jackson v. Virginia, 443 U.S. 307 (1979). In this case, there are three different types of evidence, which in the aggregate could justify a rational trier of fact in finding the essential elements of these crimes beyond a reasonable doubt. First, several passages from the recorded transcripts suggest the sale of drugs to third parties. Second, the use of a code such as Parker and O'Leary used can be evidence of a drug-dealing conspiracy. Third, the apparent amount and packaging of the cocaine sales may be used to infer purchase for resale rather than individual use.
 
 
 5
 * The Recorded Passages
 
 
 6
 At least two passages from the recorded telephone calls indicate that O'Leary was engaged in the retail sale of cocaine, and thus was part of a conspiracy to sell cocaine. As part of a conversation on February 17, 1984, O'Leary said "So, uh I got you something here." Transcript (T.) at 132. Parker testified that this meant that O'Leary had money for cocaine, to be paid to Parker. Parker testified that his business routine with O'Leary was to provide the cocaine for a down payment, with the remainder paid later. Viewed in the light most favorable to the prosecution, as we must under Glasser v. United States, 315 U.S. 60 (1942), a jury would be justified in inferring that Parker was selling the cocaine, which sales provided the money that O'Leary would later pay to Parker.
 
 
 7
 Another part of that same conversation included O'Leary's statement that "A lady wants." T. at 131. A jury could reasonably conclude that this meant that O'Leary intended to sell cocaine to a third party.
 
 B
 Use of A Code
 
 8
 O'Leary argued at trial that the terms used in his conversations with Parker referred to a gambling conspiracy between him and Parker. T. at 149-160. Although Parker acknowledged that he had additionally acted as a bookmaker, T. at 154, he consistently testified that the gambling terms used in his conversations with O'Leary were a code. T. at 127, 134, 138, 144, and 146. Viewing this evidence in the light most favorable to the prosecution, we conclude that the jury could reasonably find that the gambling terms were used as a code.
 
 
 9
 The use of a code is evidence from which a trier of fact may conclude that a drug transaction is the subject of discussion. "The conversing conspirators ... often resorted to jargon and code words, a frequent practice in narcotics dealings." United States v. Abascal, 564 F.2d 821, 827 (9th Cir.1977), citing United States v. Chavez, 533 F.2d 491, 494 (9th Cir.1976). Thus, the jury could reasonably conclude that O'Leary's use of a code is evidence, if not conclusive evidence, of his participation in a conspiracy.
 
 C
 Amount and Packaging of Cocaine Sales
 
 10
 "Intent to distribute has been inferred solely from possession of a large quantity of the substance." United States v. Franklin, 728 F.2d 994, 998 (8th Cir.1984), and cases cited at 998. Parker testified that O'Leary acquired at least an ounce of cocaine per week, and perhaps as much as three ounces every two or three days. Seven tape-recorded phone calls between Parker and O'Leary relating to cocaine purchases occurred between February 14 and March 17, 1984, a five week period. Thus, there was sufficient evidence for the jury to find that O'Leary possessed at least five ounces of cocaine, and perhaps as much as 48 ounces, in a five week period. A jury may infer intent to distribute from such large and distinct purchases, and is entitled to disbelieve an assertion of personal use.
 
 
 11
 Evidence was introduced at the trial that in one conversation between Parker and O'Leary, Parker was asked to "separate" something. The packaging of drugs in a manner consistent with distribution supports an inference of intent to distribute. Franklin, 728 F.2d at 1000, and cases cited at 1000.
 
 
 12
 Thus, the amount and manner of packaging of these cocaine sales are all indicative of an intent to distribute.
 
 D
 The Evidence In Its Totality
 
 13
 It could be argued that no single piece of this evidence would permit a reasonable finder of fact to conclude that O'Leary conspired to distribute cocaine. Such an erroneous argument would be founded upon "the purported rationale that since none of the individual items of proof tended in themselves to show guilty knowledge, the combination of all the circumstantial facts proved was an equally insufficient basis from which the jury could infer guilty knowledge.... 'The rule is not that an inference, no matter how reasonable, is to be rejected if it in turn depends upon another reasonable inference; rather, the question is merely whether the total evidence, including reasonable inferences, when put together is sufficient to warrant a jury to conclude that defendant is guilty beyond a reasonable doubt.' ... The fact that other explanations of appellant's behavior were possible, and that opposing inferences could be drawn is not determinative." United States v. Harris, 435 F.2d 74, 89-91 (D.C.Cir.1970), quoting Devore v. United States, 368 F.2d 396, 399 (9th Cir.1966).
 
 
 14
 Thus, we hold that the combination of: 1) conversations between Parker and O'Leary referring to the sale of drugs to third parties; 2) the use of a code; and 3) the significant quantities of cocaine sold and manner of its packaging, together provide sufficient evidence such that a rational jury could find, beyond a reasonable doubt, that O'Leary conspired to distribute cocaine.
 
 II
 The Motion to Suppress
 
 15
 O'Leary moved, both before and at trial, to suppress the evidence gathered by authorized wiretaps of his conversations with Parker. He argued that there was an inadequate showing of probable cause in the applications for the wiretaps.
 
 
 16
 The standard of review in determining the sufficiency of an informant's reliability for the purpose of establishing probable cause is provided by Illinois v. Gates, 462 U.S. 213 (1980). Under Gates, the issuing magistrate is to "make a practical, commonsense decision whether, given all of the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found." 462 U.S. at 238. Importantly, "[a] magistrate's determination of probable cause should be paid great deference by reviewing courts." 462 U.S. at 236.
 
 
 17
 O'Leary argues that the F.B.I.'s affidavits were "filled with statements from named and unnamed informants and that much of the information set forth is hearsay upon hearsay." The affidavit for the initial order cited information submitted to an F.B.I. agent by an informant, which the agent had independently corroborated through other information available to him. The affidavit also cited further information which could have independently supported the issuance of the order permitting monitoring. The second affidavit cited information gathered from the previous thirty-day wiretap, showing the likelihood that the monitored subjects would continue to use telephones in selling drugs, and cited much of the same material as did the first affidavit.
 
 
 18
 The trial court reviewed the affidavits and affirmed the issuing judge's decision. We have reviewed the affidavits in camera, due to the confidential nature of certain of the material contained therein, and hold that the issuing judge did have probable cause to issue the wiretap orders.
 
 III
 The Jury Panel
 
 19
 At the beginning of voir dire, one member of the jury panel acknowledged that she had some knowledge of the facts of the case, and that those facts would influence her decision. O'Leary's counsel immediately moved to strike the jury panel as having been improperly influenced. The trial court found that the juror merely stated that her knowledge would affect her judgement.
 
 
 20
 The Federal Rules of Criminal Procedure provide broad discretion for the trial judge in the jury selection process. Fed.R.Crim.P. 24(a). This Court has acknowledged the appropriateness of that degree of discretion. See, e.g. United States v. Owens, 415 F.2d 1308 (6th Cir.1969); Kuzniak v. Taylor Supply Co., 471 F.2d 702 (6th Cir.1972); United States v. Gibbons, 607 F.2d 1320 (10th Cir.1979). Our review of the entirety of the juror's comments convinces us that these comments did not improperly influence the remaining jury panel members.[1]
 
 IV
 
 21
 Defendant as a 21 U.S.C. Sec. 843(b) Facilitator
 
 
 22
 21 U.S.C. Sec. 843(b) makes it unlawful for a person intentionally to use a telephone to facilitate certain drug-related felonies. O'Leary argues that he could not have facilitated the distribution of cocaine, as there was no evidence introduced that he actually did distribute cocaine. Even if he were correct as to his distribution, it is only necessary that the government demonstrate that the telephone calls "facilitated either his own or another person's possession or distribution." United States v. Phillips, 664 F.2d 971 (5th Cir.1981). However, in view of our holding, above, that a jury could reasonably find that O'Leary participated in a conspiracy to sell cocaine, it follows that the same jury could find that O'Leary's phone calls facilitated the conspiracy of which he was a part.
 
 
 23
 The decision of the District Court is AFFIRMED.
 
 
 
 [1]
 T. at 54-55:
 Juror: I know a little bit. I used to work for the Collegedale Police Department.
 The Court: You used to work for the Collegedale Police Department?
 Juror: Yes. I know some facts on both sides about Mr. O'Leary and Mr. Parker both and I know some facts about The Company.
 The Court: Would the knowledge of those facts have any influence on your judgement?
 Juror: I am sure that it would, yes, sir.