**STATE of Minnesota, Respondent,**

v.

**Kathleen M. REIN, et al. (C8–90–2435), Tammy Dvorak, et al. (C9–90–2573), Appellants.**

**Nos. C8–90–2435, C9–90–2573.**

Court of Appeals of Minnesota.

Nov. 19, 1991.

Review Denied Jan. 30, 1992.

Hubert H. Humphrey, III, Atty. Gen., Jane A. McPeak, St. Paul City Atty., Ivars P. Krievans, Asst. City Atty., Virginia D. Palmer, Deputy City Atty., Criminal Div., St. Paul, for respondent.

Thomas W. Krauel, White Bear Lake, for Kathleen M. Rein, et al.

John D. Hagen, Jr., Minneapolis, for Tammy Dvorak, et al.

Considered and decided by KLAPHAKE, P.J., and RANDALL and CRIPPEN, JJ.

## OPINION

CRIPPEN, Judge.

## FACTS

On June 22, 1990, between 100 and 150 people gathered at a Planned Parenthood Clinic to protest abortion. Most of these people picketed on the sidewalk in front of the clinic. However, 40 people were arrested for trespass when they blocked the front entrance to the clinic. Four more people were arrested later for obstructing legal process when they stood in front of the rear entrance of the building while police escorted a Planned Parenthood physician into the building.

Appellants pleaded not guilty and were tried before a jury. In pre-trial motion proceedings the trial court was asked to exclude evidence offered to establish a necessity defense or a claim of right defense. The court refused this motion and elected to decide admissibility of evidence as the trial progressed. During trial, the court limited evidence on the two defenses. The trial court also refused to instruct the jury on necessity or claim of right.

All appellants were found guilty and were given sentences ranging between 15 days (suspended) and 60 days (45 days suspended). Appellants were also ordered to pay fines of $50.00 to $400.00. All sentences were stayed by the court of appeals pending this appeal. Appellants challenge their misdemeanor convictions for trespass and obstruction of legal process.

## ISSUES

1. Were appellants erroneously denied the opportunity to establish their necessity defense?

2. Were appellants erroneously denied the opportunity to prove the merits of their claim of right to enter upon Planned Parenthood Clinic property?

3. Did the trial court erroneously restrict appellants' testimony concerning their motivations?

## ANALYSIS

### 1.

■ Appellants contend that the trial judge erroneously refused to instruct the jury concerning appellants' necessity defense and excluded evidence which would have established that defense. Before trial, the court excluded a photograph appellants labeled as a picture of aborted babies in a clinic dumpster. The court also excluded the testimony of a physician who would have testified regarding different stages of fetal development and that abortion kills a human being. The court also prevented appellants from showing a movie entitled "The Silent Scream" to the jury. All evidence was excluded on the grounds that it was irrelevant to the charge or defense.

■ A necessity defense defeats a criminal charge

if the harm that would have resulted from compliance with the law would have significantly exceeded the harm actually resulting from the defendant's breach of the law.

*United States v. Seward*, 687 F.2d 1270, 1275 (10th Cir.1982) (quoting *State v. Marley*, 54 Haw. 450, 509 P.2d 1095 (1973)), *cert. denied*, 459 U.S. 1147, 103 S.Ct. 789, 74 L.Ed.2d 995 (1983). In addition, the defense exists only if (1) there is no legal alternative to breaking the law, (2) the harm to be prevented is imminent, and (3) there is a direct, causal connection between breaking the law and preventing the harm. *Seward*, 687 F.2d at 1270.

The defense of necessity was not available to these appellants. Appellants enjoyed legal remedies without committing a trespass. Appellants had access to the state legislature, courts, and law enforcement organizations. *See Sigma Reproductive Health Center v. State*, 297 Md. 660, 688–89, 467 A.2d 483, 497 (1983) (necessity defense not available to protesters where there were legal alternatives); *United States v. Cullen*, 454 F.2d 386, 392 (7th Cir.1971) (observing danger in permitting high purpose to license illegal behavior). In addition, while the protesters may have delayed abortions, conduct they believed much more dangerous than their own, there is no evidence abortions were actually prevented by the trespass. *Cleveland v. Municipality of Anchorage*, 631 P.2d 1073, 1078–80 (Alaska 1981) (necessity defense rejected because harm could be protested through noncriminal means, and defendant's actions were not designed to prevent the perceived harm).

 We also observe that the necessity defense claimed by appellants was principally premised on their aim to stop abortions generally, including those permitted by law. This theory of necessity is especially flawed because it involves no cognizable harm to be avoided. The courts do not recognize harm in a practice specifically condoned by law. *United States v. Schoon*, 939 F.2d 826, 829 (9th Cir.1991). Moreover, *Schoon* may have even greater impact. Arguably, appellants committed trespass to protest the lawfulness of abortions, constituting an act of indirect civil disobedience. *Id.* at 828 (contrasting direct civil disobedience, where the law being broken is the object of the protest). The *Schoon* court determined as a matter of law that the necessity defense is unavailable regarding acts of indirect civil disobedience. *Id.*

The trial court did not err either in excluding evidence meant to establish a necessity defense or in refusing to instruct the jury concerning this defense.

2.

 Appellants next contend the trial court erred in excluding evidence which would have established a claim of right. Specifically, appellants argue that it was error to exclude: testimony of a Planned Parenthood official that counselors do not have degrees related to counseling; testimony of a counseling expert regarding what topics should properly be included in abortion counseling; and the deposition of a Planned Parenthood physician who said he did not talk to his patients prior to performing abortions. Appellants further contend they were entitled to instructions on laws governing the conduct of Planned Parenthood staff.

Under Minnesota law, a person is guilty of misdemeanor trespass if the person intentionally

> trespasses on the premises of another and, without claim of right, refuses to depart from the premises on demand of the lawful possessor.

Minn.Stat. § 609.605, subd. 1(b)(3) (1990). Appellants admit they were on the premises of Planned Parenthood and that they refused to depart when officials of Planned Parenthood, the lawful possessor, demanded they leave.

Appellants' claim of right argument is premised on the private arrest statute, Minn.Stat. § 629.37 (1990).[1] They claim this statute gives them a claim of right to enter the property for the purposes of exercising their citizen's arrest rights. *See State v. Brechon*, 352 N.W.2d 745 (Minn. 1984) (defendant may offer evidence that he has a property right such as owner, tenant, lessee, licensee or invitee); *State v. Hoyt*, 304 N.W.2d 884 (Minn.1981) (statute may give person licensee status). Appel-

---

1. Minn.Stat. § 629.37 provides:
 A private person may arrest another:
 (1) for a public offense committed or attempted in the arresting person's presence;
 (2) when the person arrested has committed a felony, although not in the arresting person's presence; or

 (3) when a felony has in fact been committed, and the arresting person has reasonable cause for believing the person arrested to have committed it.

lants contend they enjoyed the right to make a private arrest for violation of Minn. Stat. § 145.412, subd. 1(4) (1990) (performance of abortion without prior explanation of its effects).

Appellants' interpretation of the citizen's arrest right is expansive. They argue that the right is absolute, unencumbered by any requirement to show necessity. Neither party has produced for the court any authority to support appellants' interpretation of private arrest powers. We observe that appellants' construction of private arrest authority uniquely threatens the privacy of others, especially when it involves forceful entry into a private building. Private arrest powers likely cannot supersede public law enforcement activity absent extraordinary circumstances.

We discover, however, that we need not precisely articulate limits on private arrest powers. After carefully exploring the record, we find the issue is not presented on the facts of this case. No evidence indicates appellants made a citizen's arrest or at any time attempted to do so. Moreover, entry to make a citizen's arrest requires informing the offender of the intent to make an arrest, and no such action occurred here. Minn.Stat. § 629.38 (1990); *State v. Tapia*, 468 N.W.2d 342, 344 (Minn. App.1991), *pet. for rev. denied* (Minn. May 23, 1991).

One appellant testified the group was assembled to make private arrests. This was not borne out by words or deeds during the trespass activity. The record shows that the protesters attempted to give a police lieutenant several papers including a reproduction of the private arrest statute. This demonstrated that appellants were aware of the private arrest statute but not that they were engaged in arrest activity. There is evidence that the protesters informed police there were felonies occurring inside the building, however, they asked police to investigate. There is evidence that protesters asked police to make citizen's arrests. There is evidence that the protesters asked police for permission to enter the building to investigate felonies occurring inside. There is no evidence that the protesters communicated any desire to make the private arrests themselves.

The evidence and instructions which appellants contend were erroneously excluded from the trial proceedings went to the basis of their belief that there were felonies occurring inside the building. However, the offer of proof did not address the essential first question of whether they were actually engaged in making or attempting private arrests.

Appellants assert two additional legal theories supporting their claim of right defense. We conclude neither has merit. First, citing Restatement (Second) of Torts § 197 (1965), they claim a privilege to trespass which was "necessary" to prevent serious harm to pregnant women or unborn children. We find nothing to distinguish this doctrine from the defense of necessity already discussed.

In addition, appellants contend they were entitled to exercise reasonable force toward Planned Parenthood staff "to resist an offense against the person." Minn.Stat. § 609.06(3) (1990). It is doubtful the offense identified by appellants, performing an abortion without fully explaining its effects, Minn.Stat. § 145.412 (1990), is an offense against the person under Minnesota's criminal code. *See* Minn.Stat. §§ 609.221– 609.265 (1990). Moreover, a claim under section 609.06 also involves the question of reasonable behavior, a concept akin to many elements of the defense of necessity discussed earlier. *See State v. Baker*, 280 Minn. 518, 521–22, 160 N.W.2d 240, 242 (1968) (force justified if reasonably necessary); 10 *Minnesota Practice*, CRIM. JIG 7.06 (1990).

3.

▪ Finally, appellants argue the trial court unduly restricted their right to testify as to their motivation. As established in *State v. Brechon*, 352 N.W.2d at 751, criminal defendants have a due process right to explain their conduct to the jury, whether or not their motives constitute a valid defense. While the trial court may impose reasonable limits on the testimony of each

defendant, *id.* at 751, we are mindful of the need to

> scrutinize with the greatest care any restrictions on a defendant's testimony offered in that defendant's own behalf as to his or her intent and the motivation underlying that intent lest we jeopardize the federal and state constitutional right to a fair trial.

*Id.* (Wahl, J., concurring specially).

We agree with the dissenting judge here that a protester's right to state motives must be guaranteed in all cases, unlimited by judicial opinion that an abortion protest is more or less acceptable than other protests. We conclude that there is no evidence the trial judge unreasonably restricted this right or displayed any judgment on the motives of appellants.

A review of the record reveals that defendants were given freedom to testify that (1) their actions on the day of the protest were peaceful, (2) they believed abortion was wrong, (3) they believed abortion kills a human being, (4) they believed abortion harms women, (5) their beliefs stemmed from moral or religious convictions, (6) they believed there were felonies occurring inside the building, (7) they had tried alternatives to trespass to no avail, and (8) they relied upon certain statutes which they believed gave them a right to be on the Planned Parenthood premises.

Although many items of proposed testimony were excluded, the trial court carefully allowed each motivation to be fully described, even though none of this evidence constituted a defense to the trespass accusation. Exclusions occurred on efforts to enlarge testimony on beliefs of appellants by establishing the validity of these beliefs (*e.g.,* the life experiences leading to convictions on abortion, the evidence available to show unlawful abortions occurred on the site). The trial judge properly viewed this additional testimony as cumulative and beyond the broad parameters of testimony permitted under *Brechon.* Having attempted to scrutinize the court's evidentiary decisions carefully, we are con-

vinced the trial court fully preserved appellants' constitutional right to a fair trial.

Affirmed.

RANDALL, Judge, dissenting.

I respectfully dissent. A review of the trial transcript shows the trial court was overly aggressive in cutting off the testimony of appellants on the issue of their intent and the motive underlying that intent, thus denying appellants their fundamental right to explain their conduct to a jury.

The trial started with a questionable decision by the state to move in limine to keep from the jury any and all evidence the defendants might want to offer to establish the defense of necessity or justification, and to exclude any evidence offered by defendants as to their motive and intent as it would relate to a claim of right. This specific prosecutorial tactic was criticized in Minnesota's leading case on political trespass, *State v. Brechon,* 352 N.W.2d 745 (Minn.1984).

> The use of a motion in limine against a defendant in a criminal case * * * is questionable considering the constitutional rights of defendants.

*Id.* at 748.

I can agree with the majority that the trial court did not commit reversible error by limiting appellants' use of the necessity defense. Other means are available to protesters, including their constitutionally protected right to peacefully picket, assemble, and speak against a Planned Parenthood Clinic. However, appellants' claim of right issue is distinct and different from the claim of necessity. I find *Brechon* controlling. Appellants had at least a color of claim of right. Minn.Stat. § 145.412, subd. 1(4) (1988) states in pertinent part:

> It shall be unlawful to willfully perform an abortion unless the abortion is performed:
>
> * * * * * *
>
> with the consent of the woman submitting to the abortion after a full explanation of the procedure and effect of the abortion.

This statute has been held constitutional. *Hodgson v. Lawson,* 542 F.2d 1350, 1356 (8th Cir.1976); *see also Planned Parenthood of Central Missouri v. Danforth,* 428 U.S. 52, 66–67, 96 S.Ct. 2831, 2840, 49 L.Ed.2d 788 (1976). Violation of this statute is a felony. Minn.Stat. § 145.412, subd. 4 (1988). Appellants offered to prove that abortions are being performed at Planned Parenthood in violation of these statutes. I find the trial court improperly limited appellants' offered testimony on the issue of claim of right.

Appellants' evidence on the claim of right issue should have gone to the jury. The prosecution is entitled to ask for and the trial court is entitled to give appropriate jury instructions on that defense. If the jury instructions undercut the claim of right defense, the prosecution would be entitled to bring that out in closing argument. The point is, it should have gone to the jury. The *Brechon* court considered the issue in depth and concluded:

> *[W]e hold that the jury, not the court, decides the sufficiency of the evidence presented to establish a claim of right.* The court may not require a pretrial offer of proof in order to decide as a matter of law that defendants have no claim of right. This is so because claim of right evidence is evidence tending to disprove an essential element of the state's case: that the actor trespassed without claim of right.

*Brechon,* 352 N.W.2d at 750 (emphasis added) (footnote omitted).

Contrary to *Brechon,* here the trial court decided for itself the issue of claim of right, kept appellants' offered evidence from the jury, and refused appellants' requested jury instruction on a claim of right.

I disagree with the majority's conclusion that appellants were given a full opportunity to explain their conduct to the jury. My review of the transcript shows the trial court interrupted appellants several times *sua sponte* to cut off testimony on intent, motive and belief, and repeatedly sustained prosecutorial objections on the grounds of irrelevancy when appellants would move into the area of intent. I agree that under *Brechon,* a trial court retains the right to sustain objections to otherwise admissible evidence if it becomes cumulative or repetitious. I also believe, however, a careful reading of the spirit and letter of *Brechon* admonishes the trial court to be cautious in cutting off admissible evidence on intent merely because it remotely resembles other evidence previously offered.

*Brechon* was not a classic common law trespass case where a poacher hunts the king's land or a stranger cuts through the farmer's hay field. It involved a "political/protest" trespass by anti-war protesters who were on Honeywell property deliberately provoking an arrest for trespass so as to obtain a forum to bring attention to Honeywell Corporation's contracts to supply various types of munitions and armaments to the United States Department of Defense. Any other interpretation of *Brechon* would be goldplated naivete. There is an exact parallel between *Brechon* and this case in the nature of the protests.

With full knowledge of the clear political/protest nature of the acts of the *Brechon* trespassers, the Minnesota Supreme Court went out of its way in a carefully crafted opinion to protect the rights of those trespassers/protesters to tell a criminal jury what they were doing, why they were doing it, and why they felt they had a right to do it. The special concurrence pointed out that even though good motives might not be a full defense and the trespassers' explanations might be unavailing, they still had a right, as criminal defendants, to take the stand under oath and tell their story.[1]

---

1. Justice Wahl states:
 It makes no difference that good motive is not a defense, that favorable instructions may not be given or that an explanation may be unavailing, these defendants must be given the opportunity to testify fully and freely on the issue of criminal intent and the motive underlying that intent. *United States v. Hawk,* 497 F.2d 365 (9th Cir.1974) (defendant permitted to testify without restriction to his motive and intent in failing to file income tax returns); *United States v. Cullen* (defendant given unlimited opportunity to testify to his character and motivation in burning Selective Service

Minnesota's trespass statute reads in part:

A person is guilty of a misdemeanor if the person intentionally:

\* \* \* \* \* \*

trespasses on the premises of another and, *without claim of right*, refuses to depart from the premises on demand of the lawful possessor.

Minn.Stat. § 609.605, subd. 1(b)(3) (Supp. 1989) (emphasis added).

The Minnesota Jury Instruction Guide defines "claim of right" as follows:

[1] a bonafide claim by defendant of title to or ownership of the premises; or

[2] a bonafide claim by defendant or expression of limited permission given defendant by the lawful possessor of the premises, or someone authorized by said lawful possessor to give such permission; or

[3] a bonafide claim by defendant that permission is given to defendant to be upon the premises by a statute, rule, or regulation duly promulgated by a federal or state agency.

Comment, 10A Minnesota Practice, M–JIG 1.2 (1986).

The *Brechon* protesters did not bother to tailor their testimony as to intent and motive to carefully and neatly fit within one of the enumerated subdivisions of claim of right, nor did the supreme court's analysis limit itself to the trespass statute and corresponding M–JIG 1.2. Thus, we need not so limit our analysis here. Rather, *Brechon* was an expansive statement about the right of people charged with a crime to explain their conduct, and *Brechon* repeated the warning that criminal statutes are construed strictly against the state and in favor of defendants. *Brechon*, 352 N.W.2d at 750.

When a defendant takes the stand in a criminal case, it is a powerful personal choice with far reaching consequences. By taking the stand, the defendant irrevocably waives the constitutional right against self-incrimination. Incriminating statements and confessions previously suppressed on the basis of illegal and irregular conduct by the state can now be used to impeach the defendant's testimony. Finally, the defendant exposes himself to what the prosecution hopes will be a piercing cross examination that shatters the defendant's case, makes the defendant's stated excuse for the charged act appear foolish and unbelievable, and aids the prosecution in obtaining a conviction. This is often the case.

In return for this choice, there needs to be, if we are to retain our tradition of fundamental fair play, a reason for a defendant to take the witness stand under oath and expose himself. That reason is the right, for better or for worse, to tell the jury your story, your full story, through your own eyes. The defendant's story does not have to track the trial court's forthcoming final instructions to the jury. If the defendant's reasons for what happened are at odds with what the court instructs the jury is a legal defense to the charge, the prosecution is entitled to beat the defendant over the head with that in closing argument. That is the state's protection. The state should try criminal cases to the jury, not in chambers.

This case does not present a complex legal issue, nor does it turn on semantics. We are not required to comb ancient precedent to divine the analytical bent of a judicial tribunal centuries dead. Rather, this case simply presents a question of "whose ox is getting gored." As a political/protest

records); *United States v. Owens*, 415 F.2d 1308 (6th Cir.1969) (defendant allowed to testify at great length to his reasons for refusing induction); *State v. Marley*, 54 Hawaii 450, 509 P.2d 1095, 1099 (1973) (defendants permitted to give testimony "as to their motivations in their actions on the day of their alleged trespass as well as to their beliefs about the nature of the activity carried on by Honeywell Corporation and the nature of

their beliefs about their rights and duties with respect to that corporation."). The strength of our democratic society lies in our adherence to constitutional guarantees of the rights of the people, including the right to a fair trial and the right to give testimony in one's own behalf.
*State v. Brechon*, 352 N.W.2d at 752 (Wahl, J., concurring specially).

trespass case, this case is indistinguishable from the supreme court's deliberate analysis in *Brechon*. The only difference is *Brechon* involved defendants who were anti-war and this case involves defendants who are anti-abortion.

Both the issues of war and abortion produce a deep split in America's fabric. Oftentime an ugly split. Although it is not pretty, at least it proves that Americans feel strongly on both sides of the issue. Courts do not determine whether anti-war protests are more "politically correct" than abortion protests. It is not up to courts to pass judgment on the "worthiness" of appellants' cause. Trespass is a crime. This is a criminal case. I do not bother my head with whether appellants should protest against "X" (because I disagree with "X") but not protest against "Y" (because I agree with "Y"). As criminal defendants, appellants are entitled to certain constitutional rights. We do not differentiate between "good" defendants and "bad" defendants. We treat all the same.

Under *Brechon*, appellants were denied the fundamental right to fully explain their conduct, including their motives and intent, to a jury of their peers. Thus, I dissent and would remand for a new trial.