Kim Marie ELLINGSON,
petitioner, Appellant,

v.

COMMISSIONER OF PUBLIC
SAFETY, Respondent.

No. A10–1913.

Court of Appeals of Minnesota.

June 27, 2011.

Samuel A. McCloud, Carson J. Heefner, McCloud & Heefner, P.A., Lindstrom, MN, for appellant.

Lori Swanson, Attorney General, Melissa Eberhart, Assistant Attorney General, St. Paul, MN, for respondent.

Considered and decided by KALITOWSKI, Presiding Judge; HUDSON, Judge; and COLLINS, Judge.*

## OPINION

KALITOWSKI, Judge.

Appellant Kim Marie Ellingson challenges the district court's order sustaining the revocation of her driving privileges under the implied-consent law, arguing that the exigent-circumstances exception does not apply to the warrantless collection of her urine sample.

## FACTS

Respondent Commissioner of Public Safety revoked appellant Kim Marie Ellingson's driving privileges after appellant was arrested for driving while impaired (DWI). Appellant petitioned the district court to rescind the revocation. The sole issue at the implied-consent hearing was whether the exigent-circumstances exception to the warrant requirement allowed police to collect appellant's urine sample without a warrant.

The arresting officer testified that he stopped appellant for speeding at 12:13 a.m. on May 3, 2009. A preliminary breath test indicated that appellant's alcohol concentration was .09. The officer ar-

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by

appointment pursuant to Minn. Const. art. VI, § 10.

rested appellant and transported her to a police station, where he read her the implied-consent advisory. Appellant gave a urine sample at 1:12 a.m. The parties do not dispute that the urine test revealed an alcohol concentration of .08 or more. *See* Minn.Stat. § 169A.20, subd. 1(5) (2008) (making it a crime for a person to drive a motor vehicle when the person's alcohol concentration is .08 or more).

Appellant called as a witness the Minnesota Bureau of Criminal Apprehension (BCA) forensic scientist who tested appellant's urine sample. The forensic scientist testified that once alcohol reaches a person's bladder, the body does not metabolize or break down the alcohol. Instead, the alcohol is stored in the bladder until voided. But the alcohol concentration of the urine in a person's bladder does not remain static:

> The kidney is always functioning and producing urine.... So whatever is being stored in the bladder is constantly being added to by freshly produced urine, and that freshly produced urine [has an alcohol concentration directly related to the alcohol concentration of the blood].
>
> So when the blood level starts changing, either by going up or going down, the urine that is being ... put into the bladder will also have a different alcohol concentration, thus, affecting the overall concentration that is in the bladder.

According to the forensic scientist, the alcohol concentration of urine in the bladder can decrease from .081 to .079 in 15 minutes.

The forensic scientist also testified that it is not possible to use retrograde extrapolation to determine the alcohol concentration of urine at a time prior to testing because there are too many variables that affect the changing alcohol concentration of the urine. *Cf. State v. Jensen,* 482 N.W.2d 238, 239–40 (Minn.App.1992) (holding that expert testimony relying on retrograde extrapolation to establish alcohol concentration of defendant's blood at time of accident was admissible but noting expert testimony that retrograde extrapolation is "unreliable when an expert has insufficient information about variables"), *review denied* (Minn. May 15, 1992).

The district court sustained the revocation of appellant's driving privileges, concluding that exigent circumstances justified the warrantless collection of the urine sample.

## ISSUE

Does the exigent-circumstances exception to the warrant requirement apply to the collection of a urine sample?

## ANALYSIS

Appellant argues that the district court erred by sustaining the revocation of her driving privileges because the exigent-circumstances exception does not allow for the warrantless collection of a urine sample. We disagree.

In a civil action to rescind the revocation of driving privileges under the implied-consent law, the commissioner has the burden to demonstrate, by a preponderance of the evidence, that revocation was appropriate. *Kramer v. Comm'r of Pub. Safety,* 706 N.W.2d 231, 235 (Minn.App.2005). In reviewing a district court's order sustaining an implied-consent revocation, we do not set aside findings of fact unless they are clearly erroneous. *Jasper v. Comm'r of Pub. Safety,* 642 N.W.2d 435, 440 (Minn. 2002). We overturn conclusions of law only if the district court "erroneously construed and applied the law to the facts of the case." *Dehn v. Comm'r of Pub. Safety,* 394 N.W.2d 272, 273 (Minn.App.1986).

The United States and Minnesota constitutions prohibit unreasonable searches and seizures. U.S. Const. amend. IV; Minn. Const. art. I, § 10. The collection of a urine sample is a search. *Skinner v. Ry. Labor Execs.' Ass'n*, 489 U.S. 602, 616–17, 109 S.Ct. 1402, 1413, 103 L.Ed.2d 639 (1989) (concluding that taking a blood, breath, or urine sample implicates the Fourth Amendment); *see also Mell v. Comm'r of Pub. Safety*, 757 N.W.2d 702, 709 (Minn.App.2008) (concluding that a breath test constitutes a search under the Minnesota Constitution). A search conducted without a warrant is per se unreasonable unless an exception applies. *State v. Othoudt*, 482 N.W.2d 218, 221–22 (Minn. 1992).

One exception to the warrant requirement is the existence of exigent circumstances. *State v. Netland*, 762 N.W.2d 202, 212 (Minn.2009). Exigency can be created by a single factor, in which case consideration of the totality of the circumstances is unnecessary. *In re Welfare of D.A.G.*, 484 N.W.2d 787, 791 (Minn.1992). The Minnesota Supreme Court has held that warrantless blood and breath tests are reasonable because of the exigent-circumstances exception to the warrant requirement. *Id.* at 213–14 (upholding warrantless breath test); *State v. Shriner*, 751 N.W.2d 538, 545 (Minn.2008) (upholding warrantless blood test). The exigency is created by a single factor: the rapid destruction of alcohol in the blood through the body's natural processes. *Netland*, 762 N.W.2d at 213–14; *Shriner*, 751 N.W.2d at 542, 544–45.

Appellant acknowledges that the exigent-circumstances exception applies to warrantless blood and breath tests. But she contends that the exception does not apply to the collection of a urine sample because "[u]rine alcohol does not dissipate or metabolize," and there is "no burn-off of alcohol in urine."

Appellant is correct that the forensic scientist testified that alcohol in the bladder is not destroyed by the body's natural processes in the same way as alcohol in the blood is destroyed. But the record supports the district court's finding that the body's natural processes cause the alcohol concentration of urine to change rapidly. The forensic scientist testified that the alcohol concentration of urine in a person's bladder changes over time due to the continuous production of urine, which is excreted to the bladder and stored there until the bladder is voided. The forensic scientist testified that the alcohol concentration of urine in the bladder can decrease from .081 to .079 in 15 minutes. And he testified that it is not possible to use retrograde extrapolation to determine the alcohol concentration of urine at a time prior to testing. Thus, we conclude that the exigent circumstances justifying a warrantless blood or breath test—the rapid change in alcohol concentration through the body's natural processes—also justify the warrantless collection of a urine sample.

Because this single factor creates exigent circumstances justifying a warrantless search, we do not reach the parties' arguments about whether exigent circumstances exist due to the risk that a person might void her bladder before a sample can be collected.

## DECISION

Because exigent circumstances allow for the warrantless collection of appellant's urine sample, we affirm the district court's order sustaining the implied-consent revocation of her driving privileges.

**Affirmed.**