Jennifer Marie **AXELBERG,**
petitioner, **Appellant,**

v.

**COMMISSIONER OF PUBLIC SAFETY, Respondent.**

No. A12–1341.

Court of Appeals of Minnesota.

June 10, 2013.

Stat. § 176.82, subd. 2, is equitable in nature, with no attendant right to a jury trial.

Ryan Michael Pacyga, Minneapolis, MN, for appellant.

Lori Swanson, Attorney General, Jeffrey S. Bilcik, Assistant Attorney General, St. Paul, MN, for respondent.

Considered and decided by CHUTICH, Presiding Judge; PETERSON, Judge; and ROSS, Judge.

## OPINION

PETERSON, Judge.

In this appeal from an order sustaining the revocation of her driver's license pursuant to the implied-consent statute, appellant argues that the district court erred by refusing to permit her to raise the affirmative defense of necessity during the judicial review hearing. We affirm.

## FACTS

Appellant Jennifer Marie Axelberg and her husband, Jason Axelberg (Axelberg), drove to a family cabin in Kanabec County. Later that day, the Axelbergs went to Fish Lake Resort, approximately nine-tenths of a mile from their cabin, where they consumed alcohol. Appellant and Axelberg argued while at the resort. Upon returning to their cabin at about 1:30 a.m., the couple, now intoxicated, began to argue again.

The argument quickly escalated, and Axelberg physically assaulted appellant, pushing her in the chest and hitting her twice on the head. Because Axelberg had taken appellant's cell phone and appellant feared that he would cause her further physical harm, appellant got into their car and locked the doors. Axelberg climbed up on the car and hit the windshield with his fist, causing the windshield to crack in a spider pattern. Appellant believed that Axelberg would soon gain access to the car and continue the assault, so she started the car and drove away as Axelberg shouted and ran after the car.

Appellant drove to Fish Lake Resort. Soon after, Axelberg arrived at the resort, and a bystander called police and intervened to stop Axelberg from acting aggressively toward appellant. The responding deputy noticed that appellant had no physical injuries and appeared calm. The deputy arrested Axelberg for domestic assault and disorderly conduct, and Axelberg later pleaded guilty to both offenses.

Appellant was also arrested on suspicion of driving while impaired, and the commissioner of public safety revoked her driver's license pursuant to the implied-consent statute. Appellant sought judicial review of the license revocation and attempted to assert the affirmative defense of necessity. The district court concluded that the necessity defense is not a recognized defense in an implied-consent proceeding and sustained the revocation of appellant's driver's license.

## ISSUE

Is the necessity defense available to a voluntarily intoxicated driver who violates the implied-consent statute?

## ANALYSIS

 In a judicial review hearing for a driver's license revocation under the implied-consent statute, the commissioner must demonstrate by a preponderance of the evidence that license revocation is appropriate. *Ellingson v. Comm'r of Pub. Safety,* 800 N.W.2d 805, 806 (Minn.App. 2011), *review denied* (Minn. Aug. 24, 2011). This court reviews the district court's findings supporting an order sustaining a license revocation for clear error. *Jasper v. Comm'r of Pub. Safety,* 642 N.W.2d 435, 440 (Minn.2002). We give de novo review to questions of law in implied-consent proceedings. *Harrison v. Comm'r of Pub. Safety,* 781 N.W.2d 918, 920 (Minn.App. 2010); *see Ellingson,* 800 N.W.2d at 806 (stating that appellate court will "overturn conclusions of law only if the district court erroneously construed and applied the law to the facts of the case"). The availability of an affirmative defense is a question of law. *See Boland v. Comm'r of Pub. Safety,* 520 N.W.2d 487, 488 (Minn.App.1994).

 The necessity defense is a common-law affirmative defense that has been applied in criminal cases.[1] *State v. Han-*

---

1. A similar rule may apply in some civil cases. Under Restatement (Third) of Torts § 15(e) (2010), "[a]n actor's violation of a statute is excused and not negligence if … the actor's compliance with the statute would involve a greater risk of physical harm to the actor or to others than noncompliance." An implied-consent proceeding is civil in nature, but the

*son,* 468 N.W.2d 77, 78 (Minn.App.1991), *review denied* (Minn. June 3, 1991). It "applies only in emergency situations where the peril is instant, overwhelming, and leaves no alternative but the conduct in question." *State v. Johnson,* 289 Minn. 196, 199, 183 N.W.2d 541, 543 (1971); *see Weierke v. Comm'r of Pub. Safety,* 578 N.W.2d 815, 816 (Minn.App.1998) ("The necessity defense applies in emergency situations w[h]ere peril is imminent and the defendant has no other option but to violate the law."). To successfully assert the defense, a criminal defendant must show that the harm that would have resulted from obeying the law would have significantly exceeded the harm actually caused by breaking the law, there was no legal alternative to breaking the law, the defendant was in danger of imminent physical harm, and there was a direct causal connection between breaking the law and preventing the harm. *State v. Rein,* 477 N.W.2d 716, 717 (Minn.App.1991), *review denied* (Minn. Jan. 13, 1992). But the defense is not available when a person's reason for claiming the defense arose from the person's own negligence or recklessness. *Johnson,* 289 Minn. at 199, 183 N.W.2d at 543.

No Minnesota appellate court has applied the necessity defense in a civil implied-consent license-revocation case. *Weierke,* 578 N.W.2d at 816 ("[I]t has not been determined that the necessity defense is available in implied consent cases.").[2] But even if a court had determined that, under the common law, the necessity defense applies in a civil implied-consent license-revocation case, it is "the province of the legislature to modify the common law." *Larson v. Wasemiller,* 738 N.W.2d 300, 303 (Minn.2007). When enacting the implied-consent statute, the legislature was not required to follow the common law. However, "statutes are presumed not to alter or modify the common law unless they expressly so provide." *Id.* "We generally presume that a statute is consistent with the common law and, if the legislature intends to enact a statute that abrogates the common law, the legislature will do so by express wording or necessary implication." *Goodyear Tire & Rubber Co. v. Dynamic Air, Inc.,* 702 N.W.2d 237, 244 (Minn.2005).

The implied-consent statute expressly limits the issues that may be addressed in an implied-consent judicial review hearing. The statute provides:

implied-consent statute applies when an officer has probable cause to believe that a person was driving, operating, or in control of a motor vehicle while impaired and does not require a finding that the person was negligent. *See* Minn.Stat. § 169A.51 (2012).

2. Appellant cites three unpublished opinions issued by this court that discuss the necessity defense in the implied-consent context, but these cases do not specifically authorize or apply the necessity defense. In *Solorz v. Comm'r of Pub. Safety,* this court rejected a driver's argument that the necessity defense should be permitted in implied-consent cases. No. A12–0006, 2012 WL 3023425 (Minn.App. July 23, 2012). In *Brueggemeier v. Comm'r of Pub. Safety,* this court refused to permit a driver to raise a necessity defense, stating "[i]t is not for us to create a new defense in an implied consent proceeding; that role is for the legislature or the supreme court." No. C4–98–1803, 1999 WL 243436, at *2 (Minn. App. April 27, 1999). In *Frohn v. Comm'r of Pub. Safety,* this court noted that historically the necessity defense was allowed only in criminal cases, but recognized that "an argument [could] be made that the necessity defense should be available in implied consent proceedings." No. C1–94–1250, 1995 WL 34821, *1 n. 1 (Minn.App. Jan. 31, 1995). However, in *Frohn,* this court also noted that even if the defense applied in implied-consent cases, the facts of that case did not establish a prima-facie case. *Id.* at *2.

(b) The scope of the hearing *is limited to* the issues in clauses (1) to (10):

(1) Did the peace officer have probable cause to believe the person was driving, operating or in physical control of a motor vehicle or commercial motor vehicle in violation of section 169A.20 (driving while impaired)?

(2) Was the person lawfully placed under arrest . . . ?

(3) Was the person involved in a motor vehicle accident or collision resulting in property damage, personal injury, or death?

(4) Did the person refuse to take a screening test . . . ?

(5) If the screening test was administered, did the test indicate an alcohol concentration of 0.08 or more?

(6) At the time of the request for the test, did the peace officer inform the person of the person's rights and the consequences of taking or refusing the test . . . ?

(7) Did the person refuse to permit the test?

(8) If a test was taken by a person driving, operating, or in physical control of a motor vehicle, did the test results indicate at the time of testing:

(i) an alcohol concentration of 0.08 or more; or

(ii) the presence of a controlled substance . . . ?

(9) If a test was taken by a person driving, operating, or in physical control of a commercial motor vehicle, did the test results indicate an alcohol concentration of 0.04 or more at the time of testing?

(10) Was the testing method used valid and reliable and were the test results accurately evaluated?

Minn.Stat. § 169A.53, subd. 3(b) (emphasis added).

■ We agree with the district court's conclusion that the necessity defense is outside the limited scope of issues that may be addressed in an implied-consent proceeding. By expressly identifying the issues that may be addressed at a judicial review hearing, the legislature, by necessary implication, excluded issues that are not identified. The plain language of the statute does not include the necessity defense among the "limited" issues that may be addressed. When a statute is unambiguous, it is not subject to interpretation. *Taylor v. LSI Corp. of America,* 796 N.W.2d 153, 156 (Minn.2011) ("If the law is clear and free from ambiguity, then the plain meaning of the statute's words controls our interpretation of the statute."); *Int'l Bhd. of Elec. Workers, Local No. 292 v. City of St. Cloud,* 765 N.W.2d 64, 68 (Minn.2009) ("It is the duty of this court to apply the law as written by the legislature."); *State ex rel. Coduti v. Hauser,* 219 Minn. 297, 303, 17 N.W.2d 504, 507–08 (1945) (stating that a correction to a law "must be done by amendment rather than construction, there being no ambiguity in the later law"); *see also* Minn.Stat. § 645.16 (2010) (stating that the goals of statutory interpretation are to ascertain and effectuate the legislature's intent).

The legislature's intent to exclude the necessity defense from the "limited" issues that may be addressed during an implied-consent judicial review hearing is also demonstrated by another provision of the implied-consent statute, which states that "[i]t is an affirmative defense for the petitioner to prove that, at the time of the refusal, the petitioner's refusal to permit the test was based upon reasonable grounds."[3] Minn.Stat. § 169A.53, subd.

**3.** This affirmative defense is relevant to the

test-refusal issues that may be raised at a

3(c) (2010). The legislature's decision to include only this affirmative defense in the implied-consent statute indicates that the legislature rejected other possible defenses, including the necessity defense. *See* Minn.Stat. § 645.19 (2010) ("Exceptions expressed in a law shall be construed to exclude all others.").

Excluding the necessity defense from the issues that may be addressed during a judicial review hearing is also consistent with the remedial purpose of the implied-consent statute, which "must be liberally interpreted in favor of the public interest and against the private interest of the drivers involved." *Ekong v. Comm'r of Pub. Safety*, 498 N.W.2d 319, 322 (Minn. App.1993); *see Rude v. Comm'r of Pub. Safety*, 347 N.W.2d 77, 80 (Minn.App.1984) (stating that the purpose of the implied-consent statute is to "promote public safety on the highway and aid the proper enforcement of the D.W.I. statute"). Appellant was threatened with physical injury by her husband. But, by driving while impaired, appellant created the very risk of physical injury to herself and to other highway users that the implied-consent statute is intended to prevent.

Appellant also argues that because this court has recognized a different affirmative defense in an implied-consent case, we should recognize the necessity defense in this case. In *Dutcher v. Comm'r of Pub. Safety*, 406 N.W.2d 333 (Minn.App.1987), this court permitted the driver in an implied-consent case to raise the affirmative defense of post-accident alcohol consumption. Without addressing legislative intent with respect to the implied-consent statute, this court reasoned that post-accident evidence of alcohol consumption was "certainly ... germane" to an implied-consent civil proceeding because to prohibit the defense "could revoke the license of one entirely sober at the time of accident who thereafter imbibed but did not drive." *Id.* at 336.

Under the affirmative defense recognized in *Dutcher*,[4] a driver could be exonerated only by showing that the driver was not impaired at the time of driving and, therefore, did not present the threat to public safety that the implied-consent statute is intended to address. In contrast, applying the necessity defense in this case would excuse appellant's violation of the implied-consent statute on the basis that the emergency that appellant found herself in after voluntarily becoming intoxicated constituted a valid reason for driving while impaired. The *Dutcher* rationale for recognizing an affirmative defense does not apply to the necessity defense.

## DECISION

Because the scope of issues that may be raised at an implied-consent judicial review hearing is explicitly limited under Minn. Stat. § 169A, subd. 3(b), and does not include whether the necessity defense applies to a driver's impaired driving, we affirm the district court's order sustaining the revocation of appellant's driver's license.

**Affirmed.**

CHUTICH, Judge (dissenting).

The majority concludes that the common-law defense of necessity is not available in an implied-consent proceeding under Minn.Stat. § 169A.53 (2010). While

judicial review hearing under Minn.Stat. § 169A.53, subd. 3(b)(4) and (7).

**4.** Our research has not identified any case under the implied-consent statute in which

the Minnesota Supreme Court has recognized post-accident alcohol consumption as an affirmative defense to an implied-consent violation.

we recognize that no Minnesota appellate court has ever expressly recognized the defense, no published opinion has foreclosed its availability. Because I believe that the defense is available in cases where extraordinary circumstances exist, I respectfully dissent.

On May 30, 2011, appellant Jennifer Axelberg faced the agonizing choice of remaining trapped in a car while her violent husband tried to break the windshield to beat her up or driving while under the influence of alcohol less than a mile to what she hoped was safety. Axelberg and her husband were drinking on the evening of May 30 at a resort near the lake cabin where they were staying. After walking back to their cabin from the resort, the Axelbergs resumed an argument that began earlier in the evening. They were standing outside the cabin near their car as the argument escalated into physical violence when Axelberg's husband shoved her and hit her twice on the head.

To avoid being further assaulted, Axelberg got into the car and locked the doors. She testified that she only entered the car because she had no other options. Her husband stood between Axelberg and the cabin, and she could not call for help because he had taken her cell phone earlier in the evening. Leaving by foot was not possible because she was in an unlit, unfamiliar area and Axelberg knew that her husband could outrun her. Axelberg reasonably feared for her safety, and testified that she did not intend to drive the car anywhere.

After Axelberg locked herself in the car, her husband jumped onto the hood of the car, screamed at her, and punched the windshield hard enough to spider the glass. Axelberg testified that when her husband pounded on the window, she was "really, really scared." Only then did she start the car and back out of the driveway with her husband still on the hood, pounding on the windshield. Her husband got off the car and, as Axelberg drove away, he continued to yell at her and run after the car.

Axelberg drove back to the resort where they had been earlier, which was only nine-tenths of a mile from the cabin. Her husband eventually arrived at the resort on foot and continued his aggressive behavior. A person staying at the resort intervened and called the police. Axelberg's husband was eventually charged with and convicted of domestic assault and disorderly conduct for striking his wife. The commissioner revoked Axelberg's driver's license under the implied-consent law.

At the judicial-review hearing on her driver's license revocation, Axelberg admitted that she drove her car while intoxicated, but asserted the affirmative defense of necessity. She contended that the imminent physical harm posed by her husband's aggressions left her with no legal alternative but to drive the car to escape to safety. The district court sustained the revocation, concluding that the necessity defense is not available in a civil license-revocation proceeding. Because of its conclusion, the district court declined to analyze whether the necessity defense applied to the unique circumstances of Axelberg's case.

Necessity as a defense to a criminal act is widely recognized in Minnesota under the theory that "an act done from compulsion or necessity is not a crime." *State v. Johnson*, 289 Minn. 196, 201, 183 N.W.2d 541, 544 (1971). The Minnesota Supreme Court has considered the defense even when it is not specifically provided for by statute. *Id.* at 200–02, 183 N.W.2d at 544–45. The defense "applies only in emergency situations where the peril is instant, overwhelming, and leaves no alternative

but the conduct in question." *Id.* at 199, 183 N.W.2d at 543; *see also State v. Rein,* 477 N.W.2d 716, 717 (Minn.App.1991) ("A necessity defense defeats a criminal charge if the harm that would have resulted from compliance with the law would have significantly exceeded the harm actually resulting from the defendant's breach of the law." (quotation omitted)), *review denied* (Minn. Jan. 30, 1992).

The most recent published appellate court opinion considering the availability of the necessity defense in an implied-consent case is *Weierke v. Commissioner of Public Safety,* 578 N.W.2d 815 (Minn.App.1998). The *Weierke* court noted that "it has not been determined that the necessity defense is available in implied consent cases," but did not decide the issue because no evidence supported the application of the defense in that particular case. *Id.* at 816. Thus, whether a necessity defense may be raised in an implied-consent case is still an open question under Minnesota law.

To be sure, the implied-consent statute unequivocally limits the scope of issues that may be raised in a judicial-review hearing after revocation. Minn.Stat. § 169A.53, subd. 3(b) (2010). But the statute also expressly allows a petitioner to raise reasonable test refusal as "an affirmative defense," and does not state that this defense is *the only* available defense. *Id.,* subd. 3(c) (2010).

While a general rule of construction requires us to assume that the expression of one thing is the exclusion of another, *see* Minn.Stat. § 645.19 (2012), caselaw is clear that we are not to construe a statute "in derogation of well-established principles of common law ... unless so required by express words or by necessary implication." *Swogger v. Taylor,* 243 Minn. 458, 465, 68 N.W.2d 376, 382 (1955); *see also State v. Caldwell,* 803 N.W.2d 373, 383 (Minn.2011) (stating that while we must

assume that "the expression of one thing is the exclusion of another," we only apply this rule "when the language of the statute supports such an inference"). Here, nothing in the statutory language shows that the legislature intended to foreclose recourse to the traditional, common law principle that, in rare cases, violation of a law may be justified to serve a greater public interest.

In addition, this court has, in fact, previously recognized an affirmative defense not listed in the statute. In *Dutcher v. Commissioner of Public Safety,* we held that a petitioner can assert post-driving consumption as an affirmative defense to an implied-consent revocation. 406 N.W.2d 333, 336 (Minn.App.1987). Thus, judicial recognition of the availability of an affirmative defense other than the one specifically listed in the statute is not unprecedented.

The majority correctly notes that necessity is most often applied as an affirmative defense to a criminal charge, and that an implied-consent proceeding is civil in nature. While past caselaw has highlighted the "quasi-criminal consequences" of an implied-consent driver's license revocation, *see Friedman v. Comm'r of Pub. Safety,* 473 N.W.2d 828, 832 (Minn.1991) (quotation omitted), courts have more recently held that an implied-consent proceeding is unequivocally civil in nature. *See, e.g., Harrison v. Comm'r of Pub. Safety,* 781 N.W.2d 918, 919–20 (Minn.App.2010) (recognizing that an implied-consent proceeding is civil in nature).

But the criminal/civil distinction is not a persuasive justification for declining to apply the defense in a civil implied consent action. Necessity has long been recognized as a defense in civil tort actions. *See, e.g.,* Restatement (Second) of Torts § 197 (1965) (stating that "[o]ne is privileged to enter or remain" on the land of

another, i.e., trespass, if it is "necessary to prevent serious harm" to people or property); Restatement (Third) of Torts § 15(f) (2010) (stating that liability for negligence per se is excused if "the actor's compliance with a statute would create a greater danger than the actor's violation of the statute"). Our neighboring state, Wisconsin, has also recognized that the necessity defense is available for "strict liability" civil offenses in some circumstances. *State v. Brown*, 107 Wis.2d 44, 318 N.W.2d 370, 375–77 (1982). The criminal/civil distinction, therefore, should not operate to defeat the application of the common-law necessity defense in a civil implied-consent case. Nor would the availability of the defense impair the commissioner's ability to easily and quickly process implied-consent cases because the defense applies only rarely, in emergency situations.

I would therefore hold that necessity is available as an affirmative defense in an implied-consent proceeding. This well-established common-law defense provides a necessary safe harbor for those unfortunate few caught in a Hobson's choice where "obedience to the law would ... endanger[ ] some higher value." *Johnson*, 289 Minn. at 201, 183 N.W.2d at 544 (quotation omitted). The defense is narrow and difficult to prove, but the facts of Axelberg's case warrant consideration of its application here.

A review of the district court record suggests that Axelberg had "no legal alternative to breaking the law," "the harm to be prevented [was] imminent," and "a direct, causal connection [existed] between breaking the law and preventing the harm." *See Rein*, 477 N.W.2d at 717. Whether the defense ultimately applies, however, is a factual determination we must leave to the district court because of its unique position to judge the weight of the evidence and the credibility of witnesses. I would therefore reverse the district court's decision and remand for further findings on whether the facts of Axelberg's case meet the demanding requirements of the necessity defense.