*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0143**

Ian Jorgen Crocker, petitioner,
Appellant,

vs.

Commissioner of Public Safety,
Respondent.

**Filed July 18, 2016
Affirmed
Schellhas, Judge**

Cass County District Court
File No. 11-CV-15-745

Rich Kenly, Kenly Law Office, Backus, Minnesota (for appellant)

Lori Swanson, Attorney General, Amy J. Tripp-Steiner, Assistant Attorney General, St. Paul, Minnesota (for respondent)

Considered and decided by Bratvold, Presiding Judge; Schellhas, Judge; and Reyes, Judge.

# UNPUBLISHED OPINION

**SCHELLHAS**, Judge

Appellant challenges the district court's denial of his petition to rescind the revocation of his driver's license, arguing that the implied-consent advisory is "fundamentally misleading" and that his consent to a breath test was coerced. We reject appellant's arguments and affirm.

## FACTS

Around 10:30 p.m. on April 8, 2015, Lakeshore Police Officer Derek Johnson arrested appellant Ian Jorgen Crocker for driving while impaired (DWI). Officer Johnson transported Crocker to jail and, just before midnight, administered the implied-consent advisory as prescribed by statute. After Crocker received 25 minutes of attorney time, Officer Johnson asked Crocker whether he would consent to a breath test. Crocker responded affirmatively and submitted to a breath test, which revealed an alcohol concentration of 0.21. Respondent Minnesota Commissioner of Public Safety revoked Crocker's driver's license, and Crocker filed a timely petition seeking rescission of the revocation. After a hearing, the district court denied Crocker's petition.

This appeal follows.

## D E C I S I O N

"This court reviews the district court's findings supporting an order sustaining a license revocation for clear error." *Axelberg v. Comm'r of Pub. Safety*, 831 N.W.2d 682, 684 (Minn. App. 2013), *aff'd*, 848 N.W.2d 206 (Minn. 2014). "Findings of fact are clearly erroneous if, on the entire evidence, [the reviewing court is] left with the definite and firm conviction that a mistake occurred." *State v. Diede*, 795 N.W.2d 836, 846–47 (Minn. 2011). "We give de novo review to questions of law in implied-consent proceedings." *Axelberg*, 831 N.W.2d at 684.

Crocker first argues that his due-process rights were violated by the "fundamentally misleading" language of the implied-consent advisory. Specifically, Crocker claims that "[w]here Minnesota drivers have the *right* to refuse [chemical testing], it is

unconstitutionally misleading to inform them that they are 'required' by law to submit to testing." According to Crocker, the advisory's language that "'Minnesota law requires you to take a test to determine if you are under the influence of alcohol' . . . makes it unequivocally clear to the listener that there is no right to refuse under Minnesota law." "Whether an implied-consent advisory violates a driver's due-process rights is a question of law, which this court reviews de novo." *Magnuson v. Comm'r of Pub. Safety*, 703 N.W.2d 557, 561 (Minn. App. 2005) (citing *Fedziuk v. Comm'r of Pub. Safety*, 696 N.W.2d 340, 344 (Minn. 2005)).

Crocker is correct that "due process does not permit the government to mislead individuals as to either their legal obligations or the penalties they might face should they fail to satisfy those obligations." *State v. Melde*, 725 N.W.2d 99, 103 (Minn. 2006). And the supreme court has stated that "the Minnesota Legislature has given those who drive on Minnesota roads a right to refuse the chemical test." *State v. Brooks*, 838 N.W.2d 563, 571 (Minn. 2013) (citing Minn. Stat. § 169A.52, subd. 1 (2012), which provides that "[i]f a person refuses to permit a test, then a test must not be given"). But the balance of Crocker's argument falls short.

By statute, an implied-consent advisory must inform a person "that Minnesota law requires the person to take a test . . . to determine if the person is under the influence of alcohol." Minn. Stat. § 169A.51, subd. 2(a) (2014). And Minnesota law does so require, consistent with the Fourth Amendment. *See id.*, subd. 1 (2014) (providing that chemical testing "may be required of a person" under specified circumstances, including lawful arrest for DWI); *Birchfield v. North Dakota*, No. 14-1468, 2016 WL 3434398, at *12,

3

*26–27 (U.S. June 23, 2016) (concluding that Minnesota constitutionally criminalized driver's refusal to submit to warrantless breath test where driver was arrested for DWI and did not challenge lawfulness of arrest). A person may choose to violate the legal requirement of chemical testing, Minn. Stat. § 169A.52, subd. 1 (2014), thereby subjecting himself to the consequences of violation, Minn. Stat. §§ 169A.20, subd. 2, .52, subd. 3 (2014), but the availability of such a choice does not diminish the testing mandate.

Indeed, the supreme court has stated that the implied-consent advisory "makes clear that drivers have a choice whether to submit to testing." *Brooks*, 838 N.W.2d at 570. The advisory does not inform a person simply that the law requires him to take a chemical test; the advisory also informs the person "that refusal to take a test is a crime" and "that the person has the right to consult with an attorney." Minn. Stat. § 169A.51, subd. 2(a). In other words, the advisory *as a whole* informs a driver that, with the assistance of counsel, he must decide whether to meet or to violate a legal requirement of chemical testing, where violation is itself a crime. *Id.* We conclude that the advisory is not unconstitutionally misleading as applied to Crocker, to whom Officer Johnson offered only a breath test following the advisory. *Cf. Birchfield*, 2016 WL 3434398, at *10, *27 (stating that driver "had no right to refuse" warrantless breath test offered after driver's DWI arrest and receipt of Minnesota's implied-consent advisory).

Crocker next argues that he did not freely and voluntarily consent to a breath test, i.e., that the circumstances coerced his consent to the test. The district court rejected this argument and determined that Crocker's consent was voluntary. "The question whether a consent to a search was in fact 'voluntary' or was the product of duress or coercion, express

4

or implied, is a question of fact," and a district court's finding of voluntary consent is reviewed for clear error. *Diede*, 795 N.W.2d at 846 (quotation omitted); *see also Poeschel v. Comm'r of Pub. Safety*, 871 N.W.2d 39, 45–46 (Minn. App. 2015) (stating that "[t]he question of whether an individual voluntarily consented to a search is a question of fact" and reviewing for clear error district court's determination that petitioner voluntarily consented to warrantless urine test).

"[A] driver's decision to agree to take a test is not coerced simply because Minnesota has attached the penalty of making it a crime to refuse the test." *Brooks*, 838 N.W.2d at 570. Instead, the voluntariness of a driver's consent to chemical testing is assessed under "the totality of the circumstances, including the nature of the encounter, the kind of person the d[river] is, and what was said and how it was said." *Id.* at 569 (quotation omitted); *see also Birchfield*, 2016 WL 3434398, at *27 (stating that "voluntariness of consent to a search must be determined from the totality of all the circumstances" (quotation omitted)). Consent to testing is voluntary unless the totality of the circumstances demonstrates that the driver consented because his will was overborne and his capacity for self-determination was critically impaired. *Brooks*, 838 N.W.2d at 571–72; *accord Poeschel*, 871 N.W.2d at 46.

After its analysis of the totality of the circumstances in *Brooks*, the supreme court concluded that Brooks voluntarily consented to chemical testing. 838 N.W.2d at 572. The court acknowledged that Brooks consented after arrest and while in custody but further reasoned that "Brooks was neither confronted with repeated police questioning nor was he asked to consent after having spent days in custody," that "Brooks consulted with counsel

before agreeing to take each test," and that "by reading Brooks the implied consent advisory police made clear to him that he had a choice of whether to submit to testing." *Id.* at 571–72.

Similarly here, Officer Johnson read the implied-consent advisory to Crocker before asking him whether he would consent to a breath test; Crocker also read the advisory to himself. Crocker consented after arrest and while in custody, but Officer Johnson did not subject him to repeated questioning or days in custody before asking him whether he would consent to a breath test. Officer Johnson did not yell at or threaten Crocker, who was not handcuffed when he was asked for consent to testing. Officer Johnson asked Crocker to consent to a breath test only after he received 25 minutes of attorney time.

Crocker attempts to distinguish *Brooks* by stressing that he, unlike Brooks, did not speak with an attorney before consenting to chemical testing. But *Brooks* does not suggest that voluntariness hinges on actual consultation with an attorney. The supreme court merely noted that "[it] ha[s] recognized that the *ability* to consult with counsel about an issue supports the conclusion that a [person] made a voluntary decision" and stated that "[t]he fact that Brooks consulted with counsel before agreeing to take each test *reinforces* the conclusion that his consent was not illegally coerced." *Id.* (emphasis added).

Here, Crocker failed to reach an attorney despite his multiple attempts to do so. Yet he had 25 minutes of access to a phone, phone books, and attorney directories, and he was told how to use the phone to call an attorney. Crocker chose to spend several minutes of his attorney time speaking with his father on the phone, rather than persisting in his efforts to reach an attorney. When Crocker ended the call with his father, Officer Johnson asked

6

Crocker whether he wanted to "try to contact anyone else," and Crocker answered in the negative. In sum, Crocker had the *ability* to consult with an attorney even though no consultation actually took place. As in *Brooks*, then, the totality of the circumstances indicates that Crocker's consent to chemical testing was free and voluntary. Because the district court's voluntariness finding is not clearly erroneous, we conclude that the warrantless search of Crocker's breath was justified by his consent.[1] *See State v. Johnson*, 813 N.W.2d 1, 14 (Minn. 2012) (stating that "[e]stablished exceptions to the warrant requirement include . . . searches conducted after obtaining voluntary consent").

Finally, Crocker argues that *State v. Bernard*, 859 N.W.2d 762 (Minn. 2015), *aff'd sub nom. Birchfield*, 2016 WL 3434398, was wrongly decided. But the United States Supreme Court has affirmed *Bernard*, holding that "the Fourth Amendment permits warrantless breath tests incident to arrests for drunk driving." *Birchfield*, 2016 WL 3434398, at *25, *27. We reject Crocker's futile attack on *Bernard* and conclude that, even if Crocker did not freely and voluntarily consent to the warrantless breath test, that test was permissible as a search incident to his DWI arrest.

**Affirmed.**

---

[1] We do not reach the state's alternative argument that, because a reasonable officer would have understood *Brooks* as authorizing Officer Johnson's conduct, the results of the breath test need not be suppressed even if Crocker did not freely and voluntarily consent to the test.