*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1853**

State of Minnesota,
Respondent,

vs.

Jose Amador Molina,
Appellant.

**Filed December 5, 2016
Affirmed in part, reversed in part, and remanded
Kirk, Judge**

Clay County District Court
File No. 14-CR-14-3813

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Brian J. Melton, Clay County Attorney, Pamela Harris, Assistant County Attorney, Moorhead, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Benjamin J. Butler, Assistant County Attorney, St. Paul, Minnesota (for appellant)

        Considered and decided by Kirk, Presiding Judge; Schellhas, Judge; and Bjorkman, Judge.

## UNPUBLISHED OPINION

**KIRK**, Judge

        After a hit-and-run accident, appellant was charged with driving after cancellation, felony driving while impaired (DWI), and multiple counts of criminal vehicular operation

(CVO). Appellant challenges: (1) the district court's denial of his pretrial motion to suppress blood-alcohol evidence; (2) the jury's determination that he was driving the vehicle at the time of the accident; and (3) the district court's decision to sentence him on the DWI charge after also entering a conviction for an alcohol-related CVO offense. We affirm in part, reverse in part, and remand.

## FACTS

After a hit-and-run accident, appellant Jose Amador Molina was charged with: (1) criminal vehicular operation (CVO) causing great bodily harm–gross negligence; (2) CVO causing great bodily harm–under the influence of alcohol; (3) CVO causing great bodily harm–driver who causes collision leaves scene; (4) CVO causing substantial bodily harm–gross negligence; (5) CVO causing substantial bodily harm–under the influence of alcohol; (6) CVO causing substantial bodily harm–driver who causes collision leaves scene; (7) driving after cancellation (DAC) as inimical to public safety; and (8) felony driving while impaired (DWI).

Appellant moved to suppress his blood-alcohol concentration (BAC) results that were obtained after a warrantless blood draw, arguing that he was coerced into giving a blood sample and that no established exception to the warrant requirement applied. Following a contested omnibus hearing, the district court denied appellant's motion to suppress.

A three-day jury trial was held on June 23-25, 2015. The following evidence was presented to the jury at trial:

B.O. testified that he was a guest at the Grand Inn hotel in Moorhead on November 10, 2014. B.O. was sitting at the open window of his second-floor hotel room when he witnessed a vehicle rear-end a truck on the street in front of the hotel with enough force to cause the rear-ends of both vehicles to go airborne. B.O. observed a male exit the driver-side door, run around the vehicle, and try to open the front passenger-side door. B.O. described the male as approximately 5'5'', with short, black hair, and a dark complexion. The male was unable to open the front or back passenger-side doors. The male then got back in the driver's side of the vehicle and began rocking the vehicle back and forth to free it from the truck. Once the vehicle was free, the male drove away. B.O. testified that, "I'm almost certain there was a female in the passenger side [of the vehicle], but she looked like she was unresponsive. She didn't move once."

C.C., who lives on the 3500 block of Village Green Drive, testified that he saw a severely damaged vehicle outside his apartment building on November 10, 2014. C.C. saw a male running around the vehicle from the passenger side over to the driver's side and back with both of the vehicle's front doors open. The male then ran southeast on foot as though he was abandoning the vehicle. C.C. did not see anyone else at the scene. P.C., C.C.'s wife, testified that she called the police to report the severely damaged vehicle. C.C. testified that the male returned to the scene after law enforcement arrived.

Officer Raul Lopez of the Moorhead Police Department (MPD) testified that he was the first officer to respond to the Grand Inn and that he spoke to B.O. Officer Lopez was also the first to respond to C.C. and P.C.'s apartment complex. When Officer Lopez

3

initially approached the damaged vehicle, all of the doors were closed, and he did not see anyone inside. He checked the vehicle a second time and still did not notice an occupant.

A male, later identified as appellant, then came sprinting toward the vehicle. Officer Lopez asked appellant where the girl was, and he replied that she was in the vehicle. Officer Lopez rechecked the vehicle and "saw a female that was crumbled . . . into the driver's seat, covered . . . in blood." He noted that, "[i]t wasn't like she was reclining in the seat or sitting in any normal position. . . . [H]er body was so flaccid that she was just almost like a puddle, just melted down into the driver's seat." Officer Lopez ordered appellant to the ground and tried to open the vehicle door. He was unable to wake the female, later identified as D.M.

Officer Lopez testified that D.M. and appellant were transported to the hospital by ambulance. Appellant had dried blood on his face, but he did not have any major facial or head injuries. While appellant was at the hospital, Officer Lopez read him the Minnesota Motor Vehicle Implied Consent Advisory, and appellant agreed to submit to a blood draw. A nurse collected a sample of appellant's blood. Appellant was released from the hospital that night. Donna Zittel, a forensic scientist in the toxicology lab section of the Minnesota Bureau of Criminal Apprehension (BCA), testified that she tested appellant's blood sample and it revealed a BAC of 0.114.

Officer Lopez also testified that at the hospital, appellant told him that D.M. was driving and suddenly there was a "big crash." When they were stopped because of the crash, D.M. told him that they had to get out of there and she drove away. Appellant explained that D.M. said she had to go to sleep, and appellant left the scene to charge

4

D.M.'s cell phone, which was inoperable, so he could call the police. Appellant did not claim that there was anyone else in the vehicle. Appellant called 911 shortly before Officer Lopez arrived at the vehicle. When he spoke to dispatch, appellant reported that there was a girl knocked out or asleep in a vehicle that was "crashed up," and that the girl had crashed her white vehicle.

Sergeant Steven Larsen of the MPD testified that he was the second officer to arrive at the apartment complex. When Sergeant Larsen arrived, Officer Lopez was attending to a female with a traumatic head injury in the driver's seat of the vehicle. The front passenger corner of the vehicle was significantly damaged and the front driver-side corner of the vehicle had much less damage. Although the entire windshield was cracked, only the passenger side was broken. There was blood on the glass of the broken passenger-side windshield and on the passenger-side visor. Both the driver-side and front passenger-side airbags deployed during the accident.

Detective Ryan Nelson of the MPD testified that he collected blood evidence and hair from the vehicle. He also collected both airbags, as well as a piece of glass from the passenger-side windshield, and he obtained DNA samples from D.M. and appellant for comparison. Detective Nelson also met with D.M. who was conversational, but was having memory problems. He testified that while speaking with D.M., she said she took turns driving with appellant that night, but that she did not know who was driving at the time of the accident.

D.M. testified that appellant picked her up in his white vehicle on the night of the accident, that she never drove appellant's vehicle, and that she did not have a driver's

5

license.  D.M. testified that only she and appellant were in the vehicle that night and that she rode in the front passenger seat of his vehicle.  D.M. suffered severe head trauma from the accident and does not remember the accident.

D.M. also testified that after her hospital stay, Officer Lopez visited her at her home, and she verified that appellant was driving on the night of the accident.  Detective Nelson also spoke to D.M. a few days after Officer Lopez.  At trial, D.M. acknowledged a transcript of her conversation with Detective Nelson, during which she told him that she was frustrated because she could not remember the accident, and that she drove appellant's vehicle multiple times that night.  D.M. testified that she did not remember telling Detective Nelson that she drove appellant's vehicle and did not remember driving appellant's vehicle on the night of the accident.

Kathryn Roche, a forensic scientist in the biology section of the BCA, testified that she tested the driver- and passenger-side airbags as well as the glass from the windshield and determined that D.M.'s DNA was present on the passenger-side airbag and the glass.  Roche did not find DNA on the driver-side airbag.  Appellant's DNA was not found on any of these items.

The jury convicted appellant on all eight counts.  The district court entered convictions on all eight counts and sentenced appellant to 79 months in prison on the felony-DWI conviction.  This appeal follows.

**I.** **Additional findings are necessary on whether appellant freely and voluntarily consented to the warrantless blood test and on whether exigent circumstances justified the warrantless blood test.**

    **A.** **Appellant forfeited his due-process claim by failing to raise it to the district court; appellant's Fourth Amendment claims require further review by the district court.**

"When reviewing a pretrial order on a motion to suppress, we review the district court's factual findings under our clearly erroneous standard. We review the district court's legal determinations, including a determination of probable cause, de novo." *State v. Milton*, 821 N.W.2d 789, 798 (Minn. 2012) (citations omitted). Here, the parties do not challenge the district court's factual findings. Where the facts are undisputed, "our review is entirely de novo." *State v. Burbach*, 706 N.W.2d 484, 487 (Minn. 2005).

The United States and Minnesota Constitutions protect individuals from unreasonable searches and seizures. U.S. Const. amend. IV; Minn. Const. art. I, § 10. A compelled blood draw for blood-alcohol content constitutes a search under the Fourth Amendment. *Skinner v. Ry. Labor Execs.' Ass'n*, 489 U.S. 602, 616-17, 109 S. Ct. 1402, 1412-13 (1989). "A search conducted without a warrant is per se unreasonable unless an exception applies." *Ellingson v. Comm'r of Pub. Safety*, 800 N.W.2d 805, 807 (Minn. App. 2011), *review denied* (Minn. Aug. 24, 2011).

In addition to the Fourth Amendment arguments that were litigated before the district court and are addressed herein, appellant raises, for the first time on appeal, a due-process challenge to the warrantless draw of his blood. Because appellant failed to raise his due-process challenge before the district court, this court will not address it here.

7

*Roby v. State*, 547 N.W.2d 354, 357 (Minn. 1996) (holding that appellate courts "generally will not decide issues which were not raised before the district court, including constitutional questions of criminal procedure").

**B.**      **The district court must conduct a totality-of-the-circumstances analysis to determine whether appellant consented to testing.**

Consent is an exception to the warrant requirement. *State v. Brooks*, 838 N.W.2d 563, 568 (Minn. 2013). For this exception to apply, the state must show by a preponderance of the evidence that consent was given freely and voluntarily. *Id.* The question of whether consent to search was voluntary and not the product of duress or coercion is a question of fact, which we review under the clearly erroneous standard. *State v. Diede*, 795 N.W.2d 836, 846 (Minn. 2011). "Findings of fact are clearly erroneous if, on the entire evidence, we are left with the definite and firm conviction that a mistake occurred." *Id.* at 846-47. "Voluntariness" is a question of fact that depends on the totality of the circumstances, "including the nature of the encounter, the kind of person the defendant is, and what was said and how it was said." *State v. Dezso*, 512 N.W.2d 877, 880 (Minn. 1994).

Appellant argues that the district court erred when it concluded that he freely and voluntarily consented to have his blood drawn. He asserts that his consent was not voluntary and that a warrant was required because, as part of the Minnesota Motor Vehicle Implied Consent Advisory, he was given the false warning that refusing to submit to a test is a crime. Appellant argues that the warning was untrue because a person cannot be charged with a crime for refusing a blood test unless he or she is first

given the option of submitting to an alternative test under Minn. Stat. § 169A.51, subd. 3 (2014),[1] and because it is unconstitutional to criminalize refusal to submit to a warrantless blood draw under *State v. Trahan*, ___ N.W.2d ___, 2016 WL 5930153 (Minn. 2016).

Appellant asks this court to suppress his BAC result and to reverse his convictions on the alcohol-related CVO convictions, the gross-negligence-related CVO convictions, and the felony DWI conviction.[2] Appellant asserts that without the admission of his BAC results, the convictions where BAC is an element of the crime as well as the negligence convictions must be reversed because, aside from his BAC, there was insufficient evidence to support a finding of grossly negligent driving.

The state argues that appellant consented to the blood draw, so there was no need for law enforcement to obtain a search warrant. Although the state's brief was not submitted until after the United States Supreme Court released the *Birchfield v. North Dakota*, 136 S. Ct. 2160 (2016) decision, the state did not address *Birchfield* in its brief. Appellant filed a reply brief partially addressing the *Birchfield* decision, arguing that it requires this court to conclude that his consent was not valid.

The district court did not conduct an analysis of the totality of the circumstances when it determined that appellant's consent to testing was valid. Instead, it concluded that nonconsensual blood testing in CVO cases is always permissible under Minn. Stat. § 169A.51, subd. 2 (2014), and that independent of that statute, appellant's consent to

---

[1] Appellant did not raise this issue before the district court, and this court will not address it for the first time on appeal. *Roby*, 547 N.W.2d at 357.

[2] Counts 1, 2, 4, 5, and 8 of the complaint.

testing was valid. The district court also found that Minn. Stat. § 169A.51, subd. 2(b), does not require law enforcement to read appellant the advisory, but that his consent to blood-alcohol testing was valid after he was read the advisory. The district court did not conduct further analysis of the issue.

The *Birchfield* court held that "motorists cannot be deemed to have consented to submit to a blood test on pain of committing a criminal offense." *Birchfield*, 136 S. Ct. at 2186. Because of this, appellant's consent to testing cannot be declared valid based solely on the fact that he was read an advisory that included an unconstitutional threat of criminal prosecution. *Id.* In light of *Birchfield*, the district court must analyze the totality of the circumstances, including the partial invalidity of the advisory, prior to concluding that appellant consented to testing. *Id.* ("Because voluntariness of consent to a search must be determined from the totality of all of the circumstances, we leave it to the [district] court on remand to reevaluate [appellant's] consent given the partial inaccuracy of the officer's advisory." (quotation omitted)). If the district court determines that appellant's consent was not valid on remand, and that another exception to the warrant requirement does not apply, appellant's BAC result must be suppressed.

**C.** **The district court must conduct an analysis of exigency before relying on Minn. Stat. § 169A.51, subd. 2, to excuse the warrant requirement.**

The district court relied on Minn. Stat. § 169A.51, subd. 2(a)(3), to justify the warrantless blood draw in this case. Minn. Stat. § 169A.51, subd. 2(a)(3), requires an officer who has probable cause to believe someone has committed CVO to inform the suspect that a test will be taken with or without his consent. Minn. Stat. § 169A.51, subd.

2(b), also provides that, if an officer has probable cause to believe the suspect has violated the CVO laws, and "is not pursuing an implied consent revocation," the officer "is not required to give the advisory." In other words, when dealing with a CVO suspect, an officer is not required to warn him that a blood sample may be taken without his consent. But under Minnesota law, a nonconsensual warrantless blood draw is not permissible under Minn. Stat. § 169A.51, subd. 2, absent exigent circumstances to excuse the warrant requirement. *State v. Stavish*, 868 N.W.2d 670, 673 (Minn. 2015) (noting in a CVO case that prior to *Missouri v. McNeely*, 133 S. Ct. 1552 (2013), Minnesota law permitted law enforcement to rely on Minn. Stat. § 169A.51, subd. 2, to obtain warrantless, nonconsensual blood draws from CVO suspects).

The existence of exigent circumstances may excuse the warrant requirement "when the exigencies of the situation make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment." *Id.* at 675 (quotation omitted). "Exigent circumstances . . . may exist when there is compelling need for official action and no time to secure a warrant." *Id.* (quotation omitted). The evaluating court must conduct "an objective evaluation of the facts reasonably available to the officer at the time of the search." *Id.* "[I]f under the totality of the circumstances, law enforcement 'can reasonably obtain a warrant before a blood sample can be drawn without significantly undermining the efficacy of the search, the Fourth Amendment mandates that they do so.'" *Id.* at 676 (citing *McNeely*, 133 S. Ct. at 1561). "Nothing prevents the police from seeking a warrant for a blood test when there is

11

sufficient time to do so[,] . . . or from relying on the exigent circumstances exception to the warrant requirement when there is not." *Birchfield*, 136 S. Ct. at 2184.

Appellant asserts that there is no "bright line rule" allowing nonconsensual blood testing in cases of suspected CVO, which is an accurate reflection of Minnesota law. The district court did not conduct the required analysis of whether exigent circumstances existed in this case, despite appellant raising the issue of exigency at the omnibus hearing, and despite there being some record on the point.[3] Instead, the district court relied only on Minn. Stat. § 169A.51, subd. 2(a)(3), and appellant's consent, to conclude that the blood draw in this case was lawful. The state did not address Minn. Stat. § 169A.51, subd. 2, or exigency in its brief.

The district court improperly relied on Minn. Stat. § 169A.51, subd. 2, without also determining that exigent circumstances existed to justify the warrantless search. On remand, the district court must conduct an analysis of whether exigent circumstances existed under the totality of the circumstances to justify the warrantless blood draw. If the district court determines that exigency did not exist, and that another exception to the warrant requirement does not apply, appellant's BAC result must be suppressed.

## II. There was sufficient evidence for the jury to reasonably conclude that appellant was driving at the time of the accident.

In considering a claim of insufficient evidence, this court's review is limited to a painstaking analysis of the record to determine whether the evidence, when viewed in the light most favorable to the conviction, is sufficient to allow the jurors to reach the verdict

---

[3] Appellant misrepresents the record on appeal by claiming that Officer Lopez testified at the omnibus hearing that no exigency existed at the time appellant's blood was drawn.

12

that they did. *State v. Webb*, 440 N.W.2d 426, 430 (Minn. 1989). The reviewing court must assume "the jury believed the state's witnesses and disbelieved any evidence to the contrary." *State v. Moore*, 438 N.W.2d 101, 108 (Minn. 1989). The reviewing court will not disturb the verdict if the jury, acting with due regard for the presumption of innocence and the requirement of proof beyond a reasonable doubt, could reasonably conclude that defendant was guilty of the charged offense. *Bernhardt v. State*, 684 N.W.2d 465, 476-77 (Minn. 2004).

"Direct evidence is evidence that is based on personal knowledge or observation and that, if true, proves a fact without inference or presumption." *Id.* at 477 n.11 (quotation omitted). "Circumstantial evidence is defined as evidence based on inference and not on personal knowledge or observation and all evidence that is not given by eyewitness testimony." *Id.* (quotation omitted). "[A] conviction based entirely on circumstantial evidence merits stricter scrutiny than convictions based in part on direct evidence." *State v. Jones*, 516 N.W.2d 545, 549 (Minn. 1994). In applying the circumstantial evidence standard, the reviewing court uses a two-step analysis. *State v. Silvernail*, 831 N.W.2d 594, 598-99 (Minn. 2013). "While it warrants stricter scrutiny, circumstantial evidence is entitled to the same weight as direct evidence." *State v. Bauer*, 598 N.W.2d 352, 370 (Minn. 1999). "[W]hen a disputed element is sufficiently proven by direct evidence alone . . . , it is the traditional standard, rather than the circumstantial-evidence standard, that governs." *State v. Horst*, 880 N.W.2d 24, 39 (Minn. 2016).

Appellant only challenges the jury's finding that he was driving the vehicle at the time of the accident. All eight of the offenses the jury found appellant guilty of included

the element that the defendant operated a motor vehicle. Appellant argues that there is no direct evidence that he was driving the vehicle and that the most powerful circumstantial evidence points to D.M. as the driver at the time of the accident. Appellant asserts that this court must reverse all of his convictions because the circumstantial evidence before the jury does not exclusively support the inference that appellant was the driver, and it does not eliminate the rational inference that appellant is innocent because D.M. was the driver. Appellant also suggests that B.O.'s eyewitness testimony was not credible, but we assume that the jury believed the state's witnesses. *Moore*, 438 N.W.2d at 108. The state argues that based on the evidence presented at trial, no reasonable inference other than appellant's guilt can be drawn.

Appellant misstates some of the evidence in the record and ignores that direct evidence was presented to the jury. Here, it is not necessary to apply the two-step circumstantial-evidence analysis to evaluate these convictions because they are not based entirely on circumstantial evidence. B.O.'s testimony established that he saw a male exit the driver's side of the vehicle after the accident, run around to the passenger side of the vehicle to try to open the passenger-side doors, then re-enter the vehicle through the driver's side before leaving the scene. Appellant's physical appearance matched B.O.'s description of the male. B.O. also testified that he saw a female passenger in the vehicle who appeared to be unconscious. This is direct evidence. The jury was also presented with both D.M. and appellant's statements that they were the only two people in the vehicle that night. These statements are also direct evidence.

14

Based on the direct evidence presented to the jury, before the circumstantial evidence is even considered, and viewing the verdict in the light most favorable to the conviction, the jury could have reasonably concluded, beyond a reasonable doubt, that appellant was driving the vehicle at the time of the accident. Aside from appellant's claim that he was not the driver, there is no evidence in the record to contradict B.O.'s testimony. As noted above, under *Horst*, this court need not consider circumstantial evidence if the direct evidence is sufficient to support the disputed element. 880 N.W.2d at 39.

Nonetheless, the circumstantial evidence presented to the jury further supports the jury's conclusion that appellant was the driver. For example, although Officer Lopez found D.M. in the driver's seat of the vehicle, his testimony about her condition was corroborated by B.O.'s testimony that the female passenger was unresponsive. When the jury considered this circumstantial evidence, especially along with the direct evidence of C.C.'s testimony that appellant was running back and forth between the open driver and passenger doors of the vehicle, it was rational for the jury to infer that appellant moved D.M. from the passenger's seat to the driver's seat of the vehicle after leaving the scene of the accident.

Appellant's convictions here are based on both direct and circumstantial evidence. Because the jury reasonably concluded that appellant was driving the vehicle at the time of the accident, appellant's sufficiency-of-the-evidence challenge fails.

**III.** **The district court erred when it entered convictions on all of the guilty verdicts returned by the jury.**

Minn. Stat. § 609.04, subd. 1 (2014), provides that a person "may be convicted of either the crime charged or an included offense, but not both." Minn. Stat. § 609.04, subd. 1(4), defines an included offense as "[a] crime necessarily proved if the crime charged were proved." Minn. Stat. § 609.04 also "bars multiple convictions under different sections of a criminal statute for acts committed during a single behavioral incident." *State v. Jackson*, 363 N.W.2d 758, 760 (Minn. 1985). "When the defendant is convicted on more than one charge for the same act the court is to adjudicate formally and impose sentence on one count only." *Spann v. State*, 740 N.W.2d 570, 573 (Minn. 2007) (alteration in original) (quotation omitted). Whether the district court erred by formally adjudicating multiple convictions stemming from one behavioral incident is a question of law, which this court reviews de novo. *See State v. Ferguson*, 808 N.W.2d 586, 590 (Minn. 2012).

Appellant argues that the district court erred by entering convictions for felony DWI and for the alcohol-related CVO offenses because all of the elements of DWI were necessarily proved when the two alcohol-related CVO offenses were proved.[4] Appellant asks this court to vacate the DWI conviction, and to remand for resentencing. The state argues that because the DWI conviction carries a more severe presumptive guidelines sentence it is not a "lesser included" offense to CVO. The state also asserts that because

---

[4] The alcohol-related CVO offenses were charged as counts 2 and 5 of the complaint.

16

the DWI was the most severely punishable offense, it was the conviction appellant should have been sentenced on.

Both parties fail to address the actual error that the district court made at sentencing and in its warrant of commitment. Problematically, the district court formally entered convictions on all eight counts after the jury returned eight guilty verdicts. The district court did not err in entering a conviction on the DAC offense, but it should have only formally adjudicated on one additional offense. *See* Minn. Stat. § 171.24, subd. 5 (2014) (including the element of having a previously canceled or denied driver's license). Not only was the DWI offense necessarily proved when the alcohol-related CVO offenses were proved, preventing the district court from properly adjudicating on both the DWI and those CVO offenses, but appellant could also only be formally adjudicated on one of the six CVO offenses without receiving multiple convictions under different subdivisions of the CVO statute involving the same victim in a single behavioral incident. Minn. Stat. § 609.04, subd. 1; *Spann*, 740 N.W.2d at 573; *Jackson*, 363 N.W.2d at 760. Aside from the DAC offense, appellant could have been formally adjudicated on the DWI offense and one non-alcohol related CVO offense, or on one of the alcohol-related CVO offenses but no others. In this case, the district court should not have adjudicated all eight convictions.

On remand, the district court must, at a minimum, amend the warrant of commitment. If the district court ultimately suppresses appellant's BAC result, it will need to determine whether the parties prefer a new trial to afford the state an opportunity to pursue a DWI conviction without the evidence of appellant's BAC, or whether the

17

parties prefer that the district court vacate a number of appellant's convictions and resentence accordingly. If some of the jury's findings of guilt are reversed, but it is determined that the parties do not wish to retry this case, the district court must select some surviving conviction for adjudication and sentencing. *State v. Pflepsen*, 590 N.W.2d 759, 766 (Minn. 1999) ("'[W]hen the defendant is convicted on more than one charge for the same act * * * the court [is] to adjudicate formally and impose sentence on one count only. The remaining conviction(s) should not be formally adjudicated. . . . If the adjudicated conviction is later vacated for a reason not relevant to the remaining unadjudicated conviction(s), one of the remaining unadjudicated convictions can then be formally adjudicated and sentence imposed, with credit, of course, given for time already served on the vacated sentence.'" (quoting *State v. LaTourelle*, 343 N.W.2d 277, 284 (Minn. 1984))).

**Affirmed in part, reversed in part, and remanded.**